55 CCPA
**FORT HOWARD PAPER COMPANY,**
Appellant,

v.

**KIMBERLY–CLARK CORPORATION,**
Appellee.

Patent Appeal No. 7915.

United States Court of Customs
and Patent Appeals.
March 14, 1968.

Morsell & Morsell, Curtis B. Morsell, Milwaukee, Wis. (Arthur L. Morsell, Milwaukee, Wis., of counsel), for appellant.

Hume, Clement, Hume & Lee, Jerome Gilson, Chicago Ill. (Dean A. Olds, Chicago, Ill., of counsel), for appellee.

Before WORLEY, Chief Judge, and Judges RICH, SMITH, ALMOND, and KIRKPATRICK.*

RICH, Judge.

This appeal is from a decision of the Patent Office Trademark Trial and Appeal Board, 148 USPQ 607, dismissing appellant's opposition to the registration by appellee of "Hi-Dri" on the Principal Register for "Absorbent Paper Tissue Suitable for Hygienic, Cosmetic, or Cleaning Purposes," serial No. 160,711, filed January 15, 1963, claiming first use December 27, 1962.

Appellant's opposition is based on the admittedly long prior use as trademarks for paper towels of "So-Dri,"[1] principally relied on, its earlier-used variant "Sodri," [2] and "Shur-Dri." [3]

Both parties took testimony, the witnesses for each side being cross-examined by counsel for the other.

The appeal presents two issues: (1) likelihood of confusion, etc., within the meaning of section 2(d) of the Lanham Act (15 U.S.C. § 1052(d)); [4] (2) wheth-

* Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

1. Reg. No. 651,198, Sept. 3, 1957, for paper towels.

2. Reg. No. 165,832, Mar. 20, 1923, twice renewed, last renewal for paper towels only, and No. 651,196, Sept. 3, 1957, for paper towels.

3. Reg. No. 720,359, Aug. 22, 1961, for paper towels.

4. Appellant makes two issues out of this by separately stating them as "confusing similarity" of the marks and likelihood of confusion, mistake or deception. These are, however, inseparable aspects of a single issue, as we view the matter.

er appellee made bona fide commercial use of its mark so as to support right to register.[5]

The essential facts shown by the testimony and exhibits are adequately summarized in the board's published opinion and we see no need to repeat them. The highlights are that opposer's registered marks have been used extensively on paper towels designed and sold to automotive service stations for cleaning windshields and the like. Applicant's goods include paper towels and there is, therefore, identity of goods.

■ A key factor in the board's decision of no likelihood of confusion is the descriptiveness of the term "dry" or "dri" as applied to any kind of towel and the apparent commonplace use of that term as a syllable or part of trademarks adopted and used by applicant-appellee and third parties for towels of both paper and cloth. The record shows use by what is now a division of applicant, Kimberly-Clark, since 1911, of "Driwell" on paper towels, Reg. No. 522,321, except for the period 1924–1934 when "Drytex" was used instead. In the 1941–1964 period some 2,000,000 cases of "Driwell" towels were sold. Kimberly-Clark also has a registration of "Kaydry," No. 774,-552, for disposable towels which the record shows to be paper towels. There are, in addition, 25 third-party registrations of record of marks containing "dry" or "dri," 11 of them for paper towels and 14 for cloth towels. The paper towel marks are in several instances the subject of recent or renewed registrations, indicating a probability of recent or present use.

Notwithstanding the apparent similarities between "So-Dri" in particular and "Hi-Dri," the board concluded there would be no likelihood of confusion on the following basis:

> Opposer's marks "So-Dri" and "Shur-Dri" and applicant's mark "Hi-Dri" obviously were adopted to suggest that the paper towels sold thereunder possess superior drying qualities. It likewise appears from the record that it has been a common practice for producers of paper towels and of such competitive products as cloth towels to adopt as trademarks for their products designations comprising the word "Dry" or "Dri", having a similar suggestive connotation, such as "Dri-N-Shine", "Dri-Kleen", "Dry-Mor", "Sparkle-Dri", "Easi-Dri", "Dryfast", and "Wipemdri". Under such circumstances, the scope of protection afforded opposer's marks must necessarily be narrow and manifestly cannot extend to preclude the registration by others of similar but otherwise distinguishable notations or trademarks for towels. [Cases cited.] * * * The fact, as urged by opposer, that its marks and that of applicant are hyphenated marks and the syllable "Dri" appears therein as a prefix instead of a suffix as in the third-party registrations is of no particular significance * * *. Accordingly, although the designations "So-Dri", "Shur-Dri", and "Hi-Dri" may have similar meanings, the differences between them in both sound and appearances are sufficient, in view of the nature of the marks, to preclude a likelihood of confusion or mistake as to the source of the goods sold thereunder.

We see no clear error in that conclusion or in the reasoning by which it was reached.

Compare Fort Howard Paper Co. v. Gulf States Paper Corp., 376 F.2d 904, 54 CCPA 1375, where opposition to registration of "E-Z NAPS" by the owner of "HANDINAP" and "HANDINAPS" was dismissed, the goods of both parties being paper napkins.

■ On the second issue, it is opposer's contention that there was no bona fide use of "Hi-Dri" in commerce adequate to support a registration. Briefly, the facts are as follows. Kim-

---

5. There is no question but that the mark was used, under conditions hereinafter explained, and appellant disavows any reliance on a theory of abandonment.

berly-Clark's legal department made careful arrangements for the interstate shipment and sale on December 12, 1962, from its plant in Neenah, Wisconsin, to a drugstore in Waukegan, Illinois, of six boxes each of facial tissues, table napkins, toilet tissues and paper towels, all boxed or wrapped in coverings bearing the "Hi-Dri" trademark printed thereon. No further sales were made until July 1964, a period of eighteen months. Then sales under the mark were made as follows: July, 40 cases of toilet tissue and 260 cases of facial tissue; October, 700 cases of toilet tissue, 530 cases of facial tissue, and 357 cases of towels; November, 350 cases of toilet tissue and 50 cases of napkins. The total value of 1964 sales under the mark was $15,013.60.

Appellant argues that the first sale was not "bona fide," that the mark was not actually in use at the time the application was filed, some 18 days later, and that the 1964 sales were obviously stimulated by the opposition.

The board characterized this issue as an "ex parte" matter but considered it anyway, "in the interest of removing any cloud that may be placed on applicant's activities in regard to its use of 'Hi-Dri' * * *." Since the board considered it, we will consider it.[6]

The board held, in effect, that applicant has complied with the law, and that although the initial sale was deliberately made expressly for federal registration purposes, this fact "is not damning per se" where the record shows there was an intent to continue to use the mark, and that such use was in fact continued. The board relied on the following cases: Montgomery Ward & Co. v. Sears, Roebuck & Co., 49 F.2d 842, 18 CCPA 1386; California Spray-Chemical Corp. v. Ansbacher Siegle Corp., 55 USPQ 298 (Comm'r); Western Stove Co. v. Geo. D. Roper Corp., 82 F.Supp. 206 (S.D.Cal. 1949); and Maternally Yours, Inc. v. Your Maternity Shop, Inc., 234 F.2d 538 (2d Cir. 1956). Appellant attempts, unsuccessfully we think, to distinguish these cases. Appellee's testimony was that it normally takes it about three years after adoption and first use of a new mark to take the necessary steps leading to national distribution of a product under it, during which time marketing and advertising tests and preparation for production and sale are progressing. An eighteen-month hiatus in sales, absent any indication of an intent not to proceed, does not seem to us unreasonable. We think it appropriate that appellee should proceed with caution to try out its right to registration of "Hi-Dri," as it is doing in this proceeding, before plunging into the market with more extensive sales than it did. We agree with the Board's decision that appellee complied with the law.

For the foregoing reasons, the decision dismissing the opposition is affirmed.

Affirmed.

WORLEY, C. J., did not participate.

---

6. We do not know why an opposer should be precluded from raising this reason for denying registration in an *inter partes* proceeding. See Roger & Gallet v. Janmarie, Inc., 263 F.2d 350, 46 CCPA 787, on the delay of final disposition which may result from the characterization of rulings as "ex parte." Here both parties are arguing the question and neither questions our right to pass upon it.