SELFWAY, INC., Appellant,

v.

TRAVELERS PETROLEUM, INC., Appellee.

Appeal No. 77–609.

United States Court of Customs and Patent Appeals.

June 15, 1978.

Donald A. Kaul, Roylance, Abrams, Berdo & Kaul, Washington, D. C., attorneys of record, for appellant.

Cort R. Flint, Bailey, Dority & Flint, Greenville, S. C., attorneys of record, for appellee.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

RICH, Judge.

This appeal is from the decision of the Patent and Trademark Office (PTO) Trademark Trial and Appeal Board (TTAB), 195 USPQ 578, modified, 196 USPQ 266 (1977),

ordering cancellation of Registration No. 961,776, issued June 19, 1973, to Selfway, Inc., for the service mark SELFWAY for automobile service station services. We affirm.

Summarizing the generally undisputed facts detailed in the opinion of the TTAB, 195 USPQ at 578–80, Travelers Petroleum, Inc. (Travelers), a South Carolina corporation, petitioned to cancel the aforementioned registration of Selfway, Inc., a Georgia corporation, on November 9, 1973, less than five months after its issuance. Travelers alleged and proved actual use of SELFWAY for self-service gasoline station services in South Carolina commencing on June 3, 1971, nearly ten months prior to the proven first use of the mark by Selfway, Inc., in Louisiana on March 31, 1972. The asserted ground for cancellation was § 2(d) of the Trademark Act of 1946, as amended, hereinafter "Lanham Act," (15 U.S.C. § 1052(d)).[1] Likelihood of confusion arising from unrestricted simultaneous use of the mark not being seriously contested, the issue was reduced to priority of use, complicated somewhat by the preincorporation activities of the parties' presidents, which we now relate.

From 1969 until March of 1971, both petitioner's president, Mr. Brandt, and respondent's president, Mr. Pesson, where employed by Tenneco Oil Company in the development of a self-service gasoline station business. While so employed, Pesson formulated plans to start a similar business of his own and, in connection therewith, prepared an investment brochure entitled "SelfWay Stations." The brochure, introduced in evidence as Respondent's Exhibit 1, characterizes itself as "a proposal for a company that will engage exclusively in the self-service gasoline business" and consists

1. Section 2(d) reads, in pertinent part:
    No trademark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it—

\* \* \* \* \* \*
    (d) Consists of or comprises a mark which so resembles a mark registered in the Patent and Trademark Office or a mark or trade name previously used in the United States by another and not abandoned, as to be likely, when applied to the goods of the applicant, to cause confusion, or to cause mistake, or to deceive \* \* \*.

of 16 typewritten pages containing tables and charts illustrating the expected capital requirements and returns. The term "Self-Way" appears only on the title page, all subsequent references being to "the company." Twenty copies of the brochure were given to various prospective investors.

Toward the end of 1970, Pesson disclosed his plans to Brandt. The latter was shown, but not given, a copy of the brochure. Brandt left Tenneco in early 1971, formed petitioner corporation, and commenced use of SELFWAY in South Carolina where all subsequent uses have occurred.

Pesson left Tenneco in early 1972, formed respondent corporation, and commenced use of SELFWAY in Louisiana in March of that year, later expanding on the wholesale level into Florida and Georgia. After respondent's first use of the mark, Pesson heard rumors of Brandt's activities in South Carolina, whereupon the registration in issue was sought and issued.

On the above facts, the TTAB ordered respondent's territorially-unrestricted registration cancelled, holding that likelihood of confusion from contemporaneous use of the mark in the same geographic area had been conceded and that Travelers had proven prior service-mark usage of SELFWAY.

Respondent, appellant here, asserted before the TTAB, and reasserts here, three arguments for a contrary result, to wit:

(1) Pesson's use of SELFWAY on the investment brochure was use "analogous" to service-mark usage which can be tacked on to respondent's first actual use, thereby constituting Selfway, Inc., the prior user on this record;

(2) Failing argument (1), Brandt's *knowledge* of Pesson's activities and intentions with respect to SELFWAY equitably precludes a valid adoption of the mark by Travelers, again constituting Selfway, Inc., the prior user on this record; and

(3) Failing argument (2), respondent's registration should have been ordered geographically restricted instead of cancelled in its entirety because petitioner's rights in the mark are, at best, those of a concurrent user; in other words, respondent, as prior registrant, should be entitled to retain national registration rights except for areas where petitioner actually used the mark prior to issuance of the registration, i. e., South Carolina.

With respect to the first argument, the TTAB, citing two of its own precedents, found that Pesson's brochure, being directed to prospective *investors* rather than prospective *purchasers,* and being preliminary even to the capitalization of the company, did not create any awareness of the SELFWAY mark in relation to the business he hoped to establish or the services he hoped to render. As such, the use of SELFWAY on the brochure was held *not* to be use "analogous" to service-mark usage.

The TTAB disposed of the second argument by noting that Pesson's disclosures to Brandt were unrestricted, as were the disclosures to other prospective investors, thereby precluding protection based on confidentiality of disclosure or trade secrecy. Further, no fiduciary relationship, e. g., employer-employee, was found to exist between the two men from which a legally cognizable impediment to Brandt's appropriation of the SELFWAY mark might arise. In view of its disposition of respondent's first argument, the TTAB concluded that petitioner's adoption of SELFWAY had occurred at a time when respondent had not yet entered the field. Accordingly, the TTAB found that, in this case, there was no *prior user* of which petitioner could have had the requisite disabling knowledge, thereby distinguishing respondent's cited authorities.

As to the third argument, the TTAB simply noted that the rights of the parties to concurrent use registrations were not properly in issue in a cancellation proceeding, such issues being properly resolved only in a concurrent use proceeding geared to developing the relevant evidence. In this regard, the TTAB relied upon this court's decision in *Hollowform, Inc. v. Delma Aeh,* 515 F.2d 1174, 185 USPQ 790 (Cust. & Pat. App.1975).

## OPINION

We are in general agreement with the manner in which the TTAB disposed of the three issues raised here on appeal in its ·published opinion and shall elaborate thereon, in varying degrees with respect to the three issues, only for purposes of clarification.

▬ Appellant-respondent now relies on this court's decision in *Jim Dandy Co. v. Martha White Foods, Inc.,* 458 F.2d 1397, 59 CCPA 1016, 173 USPQ 673 (1973) to support its first argument, that the brochure use was "analogous" to service-mark usage and can be tacked on to the first actual use. It is also alleged that the TTAB erred in failing to recognize that those to whom the brochure was·shown, characterized in the opinion below as prospective *investors,* were also prospective *customers.* Even conceding the latter point, appellee-petitioner correctly points out that *Jim Dandy* involved a use in connection with an *ongoing* business. Assuming further, without so holding, that one may rely upon usage of a mark prior to the actual rendition of the services with which the mark ultimately becomes associated for purposes of establishing priority therein, such usage must have been of such a nature and extent as to create an association in the mind of the consuming public between he mark and the services to be rendered. *Old Swiss House, Inc. v. Anheuser-Busch, Inc.,* 569 F.2d 1130, 196 USPQ 808 (Cust. & Pat.App.1978); *Jim Dandy Co. v. Martha White Foods, Inc.,* supra. There was no direct evidence that the dissemination of the brochure had the requisite effect. The use of SELFWAY in the brochure was not so pervasive, nor was the circulation of the brochure so widespread, as to permit an inference of such an effect. We conclude, therefore, that the earliest date which respondent may be accorded for priority purposes is its date of actual first use—March 31, 1972.

▬ On the issue of the effect of Brandt's knowledge of Pesson's intentions with respect to SELFWAY, argument (2), we agree with the TTAB's conclusion that the disclosures were made neither in confidence nor in the course of a fiduciary relationship. Respondent has pointed to no other unfair competition theory under state law in accordance with which Travelers' use of SELFWAY would have been unlawful, and we are aware of none. The law pertaining to registration of trademarks does not regulate all aspects of business morality. While adoption of a mark with knowledge of a prior actual *user* may give rise to cognizable equities as between the parties, *see, e. g., United Drug Co. v. Theodore Rectanus Co.,* 248 U.S. 90, 39 S.Ct. 48, 63 L.Ed. 141 (1918), and *Hanover Star Milling Co. v. Metcalf,* 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed.2d 713 (1916), appellant has cited no authority warranting recognition of similar equities based on knowledge of another's *intent* to use. There being no prior *user* of SELFWAY, for reasons aforesaid, of which Travelers could have had notice, and Brandt's activities appearing, from this record, to be otherwise lawful, we find Brandt's knowledge of Pesson's *intentions* to present no obstacle to Travelers' adoption of SELFWAY.

▬ Finally, with respect to appellant-respondent's third argument challenging the propriety of cancelling vis-à-vis restricting the registration in issue, we are of the opinion that the board correctly ordered the registration cancelled. The registration was territorially unrestricted. Petitioner has satisfactorily proven a state of facts inconsistent with the lawful issuance of respondent's registration and has done so within the time allowed by statute.[2] Accordingly, petitioner is entitled to the resto-

**2.** Section 14 of the Lanham Act (15 U.S.C. § 1064) reads, in pertinent part:

A verified petition to cancel a registered mark, stating the grounds relied upon, may, upon payment of the prescribed fee, be filed by any person who believes that he is or will be damaged by the registration of a mark on the principal register established by this Act, or under the Act of March 3, 1881, or the Act of February 20, 1905—

(a) within five years from the date of the registration of the mark under this Act; or

\* \* \* \* \* \*

ration of the status quo ante, that is, cancellation of the improvidently issued registration.

Appellant-respondent relies on a combination of statutory and case law in support of its contrary position. More specifically, § 18 of the Lanham Act [3] is cited as express statutory authority for the relief sought, restriction instead of cancellation. In addition, appellant relies on statements in *In re Beatrice Foods Co.*, 429 F.2d 466, 474, 57 CCPA 1302, 1311, 166 USPQ 431, 436–37, n. 13 (1970), to the effect that, in determining the rights of the parties to concurrent use registrations, early registration should be encouraged and rights in existing registrations should be recognized; that is to say, that a prior registrant may be entitled to national registration rights restricted only to allow for the actual area of use of a prior user. It is alleged that such considerations in this case justify the invocation of the alleged statutory authority of the Commissioner to restrict respondent's registration, in place of its cancellation.

■ We consider, first, the statutory grant of powers to the Commissioner in § 18 as a whole, the meaning of that statute having been of continuing concern to this court. *See, e. g., American Security Bank v. American Security and Trust Co.*, 571 F.2d 564, 197 USPQ 65 (Cust. & Pat.App. 1978); *Giant Food, Inc. v. Malone & Hyde,*

*Inc.*, 522 F.2d 1386, 187 USPQ 374 (Cust. & Pat.App.1975); *Hollowform, Inc. v. Delma Aeh,* supra. Notwithstanding the analyses in the dissenting opinions in *Hollowform* and herein to the contrary, by the very terms of § 18 the powers granted therein are grouped in accordance with the objects of their exercise, not the type of proceeding involved. Section 18 grants, inter alia, the power to "cancel" and the power to "restrict" "registration[s] of * * * registered mark[s]." Nothing is said about these powers being exercisable in a cancellation or any other type of proceeding. In fact, a registered mark may be involved in cancellation proceedings, interferences, and concurrent use proceedings. In order to determine which remedies are available in which proceedings, it is necessary to resort to §§ 2(d), 14, 16, 17, and 18 of the Lanham Act (15 U.S.C. §§ 1052(d), 1064, 1066, 1067, and 1068, respectively) dealing with the substance and procedure of these inter partes contests. Statutes in pari materia are to be construed together.

■ Considering, now, the individual powers granted in § 18, we construe "cancel" as necessarily meaning "cancel entirely" and as not including "partially cancel," since to do otherwise would reduce the express grant of the power to "restrict" to the status of surplusage.[4] We should not light-

---

(c) at any time if the registered mark becomes the common descriptive name of an article or substance, or has been abandoned, or its registration was obtained fraudulently, or contrary to the provisions of section 4 or of subsection (a), (b), or (c) of section 2 of this Act for a registration hereunder, or contrary to similar prohibitory provisions of said prior Acts for a registration thereunder, or if the registered mark is being used by, or with the permission of, the registrant so as to misrepresent the source of the goods or services in connection with which the mark is used * * *.

3. Section 18 (15 U.S.C. § 1068) reads:

In such proceedings [interference § 16, opposition § 13, concurrent use application § 2(d), and cancellation § 14; see § 17 for direct antecedent] the Commissioner may refuse to register the opposed mark, *may cancel or restrict the registration of a registered mark,* or may refuse to register any or

all of several interfering marks, or may register the mark or marks for the person or persons entitled thereto, as the rights of the parties hereunder may be established in the proceedings: *Provided,* That in the case of the registration of any mark based on concurrent use, the Commissioner shall determine and fix the conditions and limitations provided for in subsection (d) of section 2 of this Act. [First emphasis ours.]

4. *But see, Stanspec Co. v. American Chain & Cable Co.,* 531 F.2d 563, 566, 189 USPQ 420, 423, n. 9 (Cust. & Pat.App.1976), noting, without approving, a prior TTAB practice of "partially" cancelling a registration. In this regard, we note that § 37 of the Lanham Act (15 U.S.C. § 1119) uses the phrase "cancellation * * * in whole or in part" in reference to remedies available in a court of general jurisdiction. This must be regarded either as another example of the differences between proceedings in the PTO and in the courts, see note 5, infra, or as imprecise drafting.

ly attribute to Congress the use of surplus terms. So construed, the provision for cancellation proceedings in § 14 speaks only of complete cancellation, and it is reasonable to presume that the power to cancel granted in § 18 was intended to be exercised in a § 14 proceeding. Similarly, the only ways a registration can be "restricted" are by placing limitations on the description of the goods, the channels of trade, or the areas of use. We find this functional definition of the term "restrict" used in the § 2(d) proviso (note 6, infra) in reference to concurrent use proceedings, and it is reasonable to presume that the power to restrict granted in § 18 was intended to be exercised in a § 2(d) concurrent use proceeding.

■ Moreover, to *logically* justify relief in the form of "restriction" in any proceeding involving a registered mark, one must establish (1) that more than one person is entitled to use the mark and (2) that there would be no likelihood of confusion from the continued use of the mark under the conditions and limitations of the restriction.[5] If the party antagonistic to the registration is not entitled to use the mark, *no relief,* let alone restriction, would be in order. *Cf. Prince Dog and Cat Food Co. v.*

*Central Nebraska Packing Co.,* 305 F.2d 904, 49 CCPA 1328, 134 USPQ 366 (1962). If both parties are entitled to use the mark but confusion would be likely regardless of adherence to restrictions in registrations thereof, the first sentence of § 2(d), note 1, supra, mandates that the registrant, if the junior user, is not entitled to maintain *any* registration, restricted or otherwise. By necessary implication, the registrant, if the senior user, must be entitled to maintain his registration in unrestricted form (absent an adjudication of the sort referred to in note 5, supra).

■ It is thus seen that the factual situation in which the Commissioner is empowered by § 18 to restrict a subsisting registration is *exactly* the situation detailed in the proviso in § 2(d) as forming the basis for a concurrent use proceeding.[6] We conclude, therefore, that the most reasonable construction of § 18 is that the Commissioner may or may not *cancel,* that is, entirely eliminate, a subsisting registration *in a cancellation proceeding* instituted under § 14 and that the Commissioner may or may not *restrict* a subsisting registration involved *in a concurrent use proceeding* instituted under § 2(d).[7] Restriction, however, is not, in

5. We do not here consider the situation, not presented by the facts of this case, where the respective rights of the parties to use the mark have been adjudicated by a court of competent jurisdiction. In such a situation, "restriction" may well be available, in an appropriate proceeding, notwithstanding likelihood of confusion. *See Holiday Inn v. Holiday Inns, Inc.,* 534 F.2d 312, 189 USPQ 630 (Cust. & Pat.App. 1976); *Alfred Dunhill of London, Inc. v. Dunhill Tailored Clothes, Inc.,* 293 F.2d 685, 49 CCPA 730, 130 USPQ 412 (1961).

Such a prior adjudication clearly may be noticed in subsequent PTO proceedings involving the same parties, because the parties will be bound by the earlier result in their continuing relations. In this context, this court's consideration in *Dunhill* of the adjudicated concurrent rights of the parties in resolving the merits of an opposition proceeding is entirely consistent with our holding herein.

6. The proviso in § 2(d) reads, in pertinent part: *Provided,* That when the Commissioner determines that confusion, mistake, or deception is not likely to result from the continued use by more than one person of the same or similar marks under conditions and limita-

tions as to the mode or place of use of the marks or the goods in connection with which such marks are used, concurrent registrations may be issued to such persons when they have become entitled to use such marks as a result of their concurrent lawful use in commerce * * *. Concurrent registrations may also be issued by the Commissioner when a court of competent jurisdiction has finally determined that more than one person is entitled to use the same or similar marks in commerce. In issuing concurrent registrations, the Commissioner shall prescribe conditions and limitations as to the mode or place of use of the mark or the goods in connection with which such mark is registered to the respective persons * * *.

7. Having set out to construe all relevant sections of the statute together, a word should be said about § 16 (15 U.S.C. § 1066) dealing with interferences. The PTO construction of § 16 embodied in 37 CFR 2.97 is to the effect that the validity of an involved registration may be challenged in such a proceeding only by affirmative claim for *cancellation.* Such a construction seems reasonable, not contrary to law, and consistent with our analysis. The facts of this

our opinion, an appropriate alternative form of relief in a cancellation proceeding. Dicta in *Prince Dog and Cat Food,* supra, possibly to the contrary, must be regarded as without continuing vitality.

A consideration buttressing our conclusion involves the second prong of appellant-respondent's argument—the public policy considerations noted in *Beatrice Foods* (footnote 13) of "rewarding" the first to register and of recognizing rights created by existing registrations. Section 14 does more than provide for cancellation proceedings. It places particular time limitations on some of the various bases upon which cancellation will be granted (remembering that "cancellation" connotes total removal), and in so doing, represents a congressional determination that in actions brought within the stated times, the rights created by the issued registrations are outweighed by the public interest in the removal of improvidently issued registrations. We cannot now say that the subsistence of appellant-respondent's registration for some lesser period of time clothes respondent with some greater rights. We conclude that the considerations noted in *Beatrice Foods* simply are not relevant in a situation where complete cancellation is still available under § 14 and has been sought. To consider such rights and to allow restriction in lieu of cancellation, where available, would be to second guess the congressional determination that total cancellation should be available, based on § 2(d) grounds, for five years after issuance of the registration.

We are not unmindful of the hardships our holdings in *Hollowform* and this case may work on junior users with legitimate common law trademark rights. We are convinced, however, that the Lanham Act, in its present form, provides for only one inter partes procedure *in the PTO* where such concurrent rights may be adjudicated, and that is the concurrent use proceeding.

case do not require consideration of the circumstances under which an application involved in an interference may be amended or otherwise converted to a concurrent use application.

The decision of the TTAB is *affirmed.*
*AFFIRMED.*

MILLER, Judge, with whom BALDWIN, Judge, joins, dissenting.

The majority sets forth, for the first time, an interpretation of section 18 of the Lanham Act (15 U.S.C. § 1068) ("Act") which not only is contrary to the previous interpretation by this court and respected commentators, but also is in fundamental conflict with two of the basic purposes of the Act. Moreover, in concluding that appellant-junior user-registrant is not entitled to maintain *any* registration, the majority assumes a legal conclusion which the board did not make, namely: that confusion would be likely even if the registration were territorially restricted.

This appears to be the first case in which a majority of the CCPA has premised a decision on its determination of which of the powers enumerated in section 18 of the Act is exercisable by the Commissioner in which of the proceedings enumerated in section 17.[1] The majority concludes that "the most reasonable construction of § 18 is that the Commissioner may or may not *cancel,* that is, entirely eliminate, a subsisting registration *in a cancellation proceeding* instituted under § 14 and that the Commissioner may or may not *restrict* a subsisting registration involved *in a concurrent use proceeding* instituted under § 2(d)." However, this by no means is the *most* reasonable interpretation of the statute, and the one Judge Baldwin and I believe to be correct better effectuates the purposes of the Act.

A major problem in construing sections 17 and 18 arises because of the lack of correspondence between the proceedings enumerated in section 17 and the powers

1. My dissenting opinion in *Hollowform, Inc. v. Delma AEH,* 515 F.2d 1174, 185 USPQ 790 (Cust. & Pat.App.1975) did reach the issue, while the majority opinion merely relied on the rationale that "appellant's rights in the mark are not superior to appellee's right to registration." *Id.* at 1176, 185 USPQ at 791.

given the Commissioner in section 18. The majority attempts to solve the problem by harmonizing five different sections of the Act (2(d), 14, 16, 17 and 18), asserting that these sections are in pari materia and, therefore, "are to be construed together." However, it disdains including section 37 in the harmonization, suggesting instead that the provision in that section for "cancellation . . . in whole or in part" must be regarded as "another example of the differences between the proceedings in the PTO and in the courts . . . or as imprecise drafting." Contrary to this gratuitous assumption, in section 37 the drafters gave the district court authority to order partial cancellation of a registered mark, just as in section 18 they gave the Commissioner authority to "restrict the registration of a registered mark." Writers commenting on an early version of the Lanham Bill [2] prophetically wrote:

Sections 18 and 19 of the Bill [3] are ambiguous in several respects and will require judicial review before their meaning can possibly become settled. . . .

. . . The lack of any correspondence between the language of sections 18 and 19 of the Lanham Bill makes it impossible to determine with any certainty whether the Commissioner has been given jurisdiction to cancel [4] a registered mark involved in an interference, or whether the jurisdiction to cancel a registration is limited to cancellation proceedings. Because of the close similarity of

the issues in interferences and cancellation proceedings, there is no sound reason why the power to cancel a registered mark involved in an interference should not be conferred upon the Patent Office. The granting of such power may have been intended when Section 19 of the Lanham Bill was written, but it is not possible to find any clear expression of such a purpose in the Bill, or any sound reason for holding to the contrary.

Not only is the Act itself ambiguous regarding which remedies are available in which proceedings, but numerous House and Senate reports accompanying the various versions of the bill and the voluminous testimony taken over a period of many years provide no indication of the intent behind sections 17 and 18. That intent . must be divined by construing the sections of the Act in the way that best effectuates the stated purposes of the Act.

Commentators on the Act have interpreted section 18 as giving the Commissioner the power to utilize any of the remedies there enumerated in *any* of the "proceedings" set out in section 17. Daphne Robert, author of the "Commentary on The Lanham Trade-Mark Act," [5] states at page 82 of her book, *The New Trade-Mark Manual* (1947), that in an interference proceeding—

When the evidence discloses that the second applicant's rights are superior, the examiner of interferences [6] may cancel the previous registration and grant registration to the second applicant. When it

---

2. Pearne & Crotty, *Trade Mark Registration and the Lanham Bill*, 23 J. Pat. Off. Soc'y 31, 282 (1941) ("Pearne & Crotty"). The version of the bill discussed was H.R. 102, 77th Cong., 1st Sess. (1941).

3. These sections, with modification, became *the present sections 17 and 18 of the Act, respectively.*

4. The reference only to the power to cancel is explainable by the fact that the power to restrict did not appear in H.R. 102. The phrase "or restrict" first appeared in section 18 of H.R. 5461, 77th Cong., 1st Sess. (1941), introduced by Congressman Lanham as a substitute for H.R. 102. It appears to have originated in a revision submitted by a joint coordination committee which included representatives from the National Association of Manufacturers, United

States Trademark Association, and American Bar Association. *Hearings on H.R. 102, H.R. 5461, and S. 895 Before the Subcom. on Trade-Marks of the House Comm. on Patents*, 77th Cong., 1st Sess. 131–36 (1941). Unfortunately, the testimony at the hearings sheds no light on the matter.

5. 15 U.S.C.A. at 265 (1948).

6. Section 17 of the Act was amended August 8, 1958, to provide for the Trademark Trial and Appeal Board to determine the rights of the parties. Act of August 8, 1958, Pub.L. No. 85–609, 72 Stat. 540. The original Act gave this authority to an examiner of interferences. Act of July 3, 1946, ch. 540, § 17, 60 Stat. 434.

discloses that both parties have limited rights, he may grant registration to the second applicant and *restrict* the territory, manner of use, or the goods or services in both registrations.[41] [Emphasis added.]

[41] Section 18.

In discussing opposition proceedings, the author writes—

In making his finding, the examiner may refuse to register the mark for which registration is sought, may cancel *or restrict* the registration of the opposer's mark, or may register the applicant's mark and *restrict* the opposer's registration. If the examiner decides to grant concurrent registrations, the Commissioner fixes the conditions and limitations of each registration as to the mode or place of use, or the goods or services in connection with which each registration is granted. [Emphasis added.]

*Id.* at 86–87. *Accord,* 1 J. McCarthy, *Trademarks and Unfair Competition* § 20.17D. at 799–800 (1973), where it is said that section 18 of the Act "grants to the Commissioner of Patents the right, in any opposition, cancellation, or interference proceeding, to cancel or restrict the registration of a registered mark." Pearne & Crotty, *supra* note 2, have commented on the similarity of issues involved in cancellation and interference proceedings. Indeed, priority of use is an important issue in almost every opposition, cancellation, interference, or concurrent use proceeding. Since the Act groups all of the inter partes proceedings together in section 17, it is reasonable to conclude, as have the above cited commentators, that the Commissioner has the power to exercise any of the powers enumerated in section 18

"as the rights of the parties . . . may be established in the proceedings" ("proceedings" referring to all of the proceedings listed in section 17).

Past statements by this court support the above interpretation of sections 17 and 18 over the *narrow* interpretation of the majority. In *Prince Dog & Cat Food Co. v. Central Nebraska Co.,* 305 F.2d 904, 909, 49 CCPA 1328, 1335, 134 USPQ 366, 370 (1962), the court declared that section 18 "gives the Commissioner . . .. authority to restrict a registration only 'as the rights of the parties hereunder may be established in the [cancellation] proceedings.'" (Bracketed material by the court.) See also *Stanspec Co. v. American Chain & Cable Co.,* 531 F.2d 563, 566 n.9, 189 USPQ 420, 423 n.9 (Cust. & Pat.App.1976), where the court remarked, in the context of a cancellation proceeding, that the "Commissioner has authority to cancel or *restrict* the registration of a registered mark under section 18"; and my dissenting opinion in *Hollowform, Inc. v. Delma AEH, supra.*

The majority is unnecessarily preoccupied with the label attached to this inter partes proceeding, *i. e.,* "cancellation." Paraphrasing what this court stated in *Alfred Dunhill of London, Inc. v. Dunhill Clothes, Inc.,* 293 F.2d 685, 693 n.8, 49 CCPA 730, 741 n.9, 130 USPQ 412, 419 n.8 (1961), it is of no practical significance that the present inter partes proceeding is called a "cancellation" when the facts are such as to require a decision on an issue of concurrent registration.[7] The record establishes that appellant is the prior user of the mark in at least three states and, thus, has limited use rights in the mark.[8]

**7.** *Dunhill* was nominally an opposition proceeding, with only one of the parties seeking a registration. Yet, the court termed it a "concurrent" registration even though there was no companion registration issued to the other party.

**8.** The majority improperly assumes that a likelihood of confusion would exist even if appellant's registration were restricted. The board made no finding on this point. Before this court concludes that appellant-junior user is not entitled to *any* registration, section 2(d)

mandates that the board, acting pursuant to authority delegated by the Commissioner, make a finding of likelihood of confusion (regardless of any restrictions, geographical or otherwise, which could be imposed). Remand to the board for determination on this point is the proper course. It is noted that the board made findings of dates and areas of first use by each of the parties. Such findings would be binding on the parties in any further proceeding between them.

The majority clearly errs in concluding that concurrent user rights can be determined only in a concurrent use proceeding; the Act is not so written. Section 2(d) states that "concurrent registrations may be issued to such persons when they have become entitled to use such marks as a result of their concurrent lawful use in commerce," a condition obviously embraced by the phrase, "as the rights of the parties hereunder may be established in the proceedings," in section 18. The award of a concurrent registration is conditioned *only* upon the Commissioner's determination that "confusion, mistake, or deception is not likely to result from the continued use by more than one person of the same or similar marks" under conditions prescribed by the Commissioner. Section 2(d) says *nothing* about what kind of an inter partes proceeding is required for the Commissioner to make such an award.

Similarly, sections 14 and 16 of the Act, which the majority has construed "in pari materia," merely recite conditions for the institution of cancellation and interference proceedings, respectively.[9] They do *not* restrict the Commissioner to any particular remedy, and, as indicated above, section 18 gives the Commissioner authority to grant any of the enumerated remedies "as the rights of the parties . . . may be established in the proceedings."[10]

One of the basic purposes of the Act which the majority's interpretation would frustrate is that of constructive notice (section 22 of the Act).[11] By approving the total cancellation of a registration, when it is evident that the registrant possesses some rights in the mark, the majority approves removal of the constructive notice, thus laying a foundation for third parties to transgress those rights. Even if appellant later attempts to assert his rights in a concurrent use proceeding (as the majority apparently envisions), for as long a time as it takes to obtain a restricted registration there will exist no constructive notice of those rights. On the other hand, under the *broad* interpretation of the Act Judge Baldwin and I favor, there would be no "gap" in the constructive notice; the registration would be restricted, but it would remain at all times on the register as constructive notice to all third parties.[12]

Another basic purpose of the Act is that the principal and supplemental registers should reflect the actual status of all marks in use; in other words, the registration of a mark should conform, as much as possible, to the owner's right to use the mark. *Alfred Dunhill of London, Inc. v. Dunhill Clothes, Inc., supra* 293 F.2d at 691, 49 CCPA at 738, 130 USPQ at 418, and authorities cited therein. The record before us establishes that appellant has use rights in at least three states. To totally cancel its registration, as the majority would have it, would prevent the principal register from reflecting this status of the mark until and

9. The majority incorrectly states that "the provision for cancellation proceedings in § 14 speaks only of complete cancellation." Section 14 merely provides that a petition to cancel a registration may be filed. If the petitioner proves that the registrant has no right to the registration, then the Commissioner has the authority to cancel the registration. However, if it is established that the parties have concurrent rights in the mark, then the Commissioner has the authority to restrict the registration.

10. The majority attempts to distinguish *Dunhill, supra,* on the basis that there existed a prior court determination of the rights of the parties. However, presence or absence of a prior court decision is immaterial since section 2(d) expressly grants the Commissioner the authority to grant concurrent registrations even *absent* a court determination.

11. "Perhaps the greatest single advantage of registration under the Act is that it is constructive notice of the registrant's claim of ownership of the mark." D. Robert, *The New Trade-Mark Manual* 129 (1947).

12. Although it appears from this record that appellee has a pending application which will be published if appellant's registration is cancelled, in many instances this would not necessarily be the case. Under the majority's interpretation, a registrant who in good faith sought and was granted a federal registration may be totally frustrated by a single senior user who has no interest in obtaining a federal registration.

if appellant persists and files a concurrent use application and relitigates the very same issues that have already been litigated in this proceeding. The cost of such relitigation not only to the parties but also to the Patent and Trademark Office would be a foolish waste. Under the reasonable *and* broad interpretation of the Act we favor, all of the rights of the parties would be determined in a single inter partes proceeding, the board would grant the proper remedies, and the register would reflect the true status of the mark or marks.

The decision of the board should be reversed and the case remanded for a determination of the rights of the parties consistent with this opinion.