INTERNATIONAL MOBILE MA-CHINES CORPORATION,
Appellant,

v.

INTERNATIONAL TELEPHONE AND TELEGRAPH CORP., Appellee.

Appeal No. 86–753.

United States Court of Appeals, Federal Circuit.

Sept. 15, 1986.

---

Arthur A. Jacobs, Trachtman, Jacobs & Beck, of Philadelphia, Pa., submitted for appellant.

Counsel for appellee did not actively participate in this appeal.

Before MARKEY, Chief Judge, NICHOLS, Senior Circuit Judge, and BISSELL, Circuit Judge.

BISSELL, Circuit Judge.

International Mobile Machines Corporation (IMM) appeals the decision of the United States Patent and Trademark Office Trademark Trial and Appeal Board (Board), Cancellation No. 13,615,[1] cancelling Registration No. 1,179,928 issued December 1, 1981. We reverse.

1. reported at 227 USPQ 716 (TTAB 1985).

## BACKGROUND

The Board granted the petition for cancellation filed by International Telephone and Telegraph Corporation (ITT) against the registration of the mark ULTRAPHONE owned by IMM. IMM was incorporated in the early 1970's by Sherwin Seligsohn, its only full-time employee until 1981. The fifteen original investors in the company also served as its directors. Between 1972 and 1976, IMM developed a hand-held, wireless, portable telephone. The name ULTRAPHONE is used to designate a telephone system comprised of the telephone handset, plus a base station. Prior to the filing date, six prototype analog telephone units, four telephone channels and the base station incorporating a switching device had been developed. The base station is located in Philadelphia, Pennsylvania. A public demonstration of the ULTRAPHONE product was held in Fairmount Park, Philadelphia on June 25, 1976. The mark was applied to the handsets and to signs which appeared at the demonstration. June 25, 1976 was claimed in the trademark application as the date of first use. One handset was shipped on a consignment basis to Mr. Dennis Wielech (an original investor and director) in Baltimore, Maryland on an unspecified date in 1976 and later returned to IMM on an unknown date. IMM decided not to pursue the analog system, instead, directed its attention to developing a digital system. This development program was in progress when the cancellation proceeding was initiated. The Board found that the mark had not been abandoned by IMM, a finding not challenged on appeal.

The cancellation was granted based upon the Board's conclusion that the single shipment to Mr. Wielech was an insufficient bona fide commercial transaction for registration purposes. IMM appeals the Board's decision.

## OPINION

Cancellation of a mark's registration within the initial five years of registra-

tion may be based upon any ground which could have prevented registration initially. *Fort Howard Paper Company v. Kimberly-Clark Corp.,* 390 F.2d 1015, 157 USPQ 55 (CCPA), *cert. denied,* 393 U.S. 831, 89 S.Ct. 99, 21 L.Ed.2d 101 (1968); *see International Order of Job's Daughters v. Lindeburg and Company,* 727 F.2d 1087, 220 USPQ 1017 (Fed.Cir.1984) (cancellation of a mark's registration which did not serve the function of a trademark). The registrant, here IMM, enjoys the benefit of a *prima facie* evidence of the validity of the registration for the goods or services specified in the certificate.[2] In this case there is no contest over whether the IMM's goods match those specified in the certificate. In order to rebut the *prima facie* evidence of validity of registration, petitioner, here ITT, must prove improper registration by a preponderance of the evidence. *See Massey Junior College v. Fashion Institute of Technology,* 181 USPQ 272, 275 (CCPA 1974) (to rebut the absence of "likelihood of confusion").

■■■ This court reviews the Board's factual determinations under the clearly erroneous standard. *Stock Pot Restaurant, Inc. v. Stockpot, Inc.,* 737 F.2d 1576, 222 USPQ 665 (Fed.Cir.1984). Affirming the Board's decision to cancel IMM's registration would require this court to hold that a commercial transaction between the corporate-owner of a mark and a member of its board of directors and investor, is *per se* a non-commercial transaction for registration purposes. Such a holding would not be in accordance with the law as to what constitutes a commercial transaction for registration purposes.

"The owner of a trademark *used in commerce* may register his trademark...." 15 U.S.C. § 1051 (1982) (emphasis added). An initial commercial transaction is sufficient to support the validity of a registration so long as the initial transaction is not

a sham transaction and is followed by a continuing effort or intent to engage in commercial use. *Fort Howard Paper,* 390 F.2d at 1017, 157 USPQ at 57; *see also Blue Bell, Inc. v. Jaymar-Ruby, Inc.,* 497 F.2d 433, 437, 182 USPQ 65, 67–68 (2d Cir.1974) (footnotes omitted) ("It is true that a number of decisions have held that a minimal amount of interstate commerce—either a sale or transportation—will suffice. But while these decisions accept minimal use primarily intended to satisfy the trademark laws, none of them endorses sham transactions exclusively designed to do so. Rather we find a clear line of decisions holding that the use must be bona fide, with token transactions accepted only where there is an accompanying intent to engage in continuing commercial use in the future").

Furthermore, in *Standard Pressed Steel Co. v. Midwest Chrome Process Co.,* 183 USPQ 758 (TTAB 1974), the Board held that even an intra-company transaction can be a sufficient basis for registration, stating:

> Inasmuch as it is our belief that a most liberal policy should be followed in a situation of this kind [in which dispute as to priority of use and ownership of a mark is not involved], applicant's initial shipment of fasteners, although an intra-company transaction in that it was to a company sales representative, was a bona fide shipment made with an intent to establish a business under the mark "UNBAR" as evidenced by the fact that the fasteners so shipped did not remain immobile within the office of the sales representative but were openly used and distributed by said individual in an effort to promote and solicit business for applicant under the mark "UNBAR".

*Id.* at 765.

■■■ Here, the Board found that the director-investor, Mr. Wielech, to whom the

**2.** The Lanham Act, 15 U.S.C. § 1057(b) (1982), provides that:
> A certificate of registration of a mark upon the principal register provided by this chapter shall be prima facie evidence of the validity of the registration, registrant's ownership of the mark,

and of registrant's exclusive right to use the mark in commerce in connection with the goods or services specified in the certificate, subject to any conditions and limitations stated therein.

product bearing the mark ULTRAPHONE was shipped, was engaged in the insurance and financial planning business in Baltimore in addition to being an initial investor in IMM. Evidence was introduced that Mr. Wielech was interested in the ULTRAPHONE telephone in conjunction with a portable computer terminal; was interested in becoming a franchiser for the ULTRAPHONE systems as a business separate and apart from his insurance business; used the ULTRAPHONE on trips to Philadelphia; and used the ULTRAPHONE for a demonstration for others in Baltimore. Hence, we conclude that the Board clearly erred in determining that ITT met its burden of proving the registration invalid; ITT did not. We reverse.

REVERSED.