PERSON'S CO., LTD., Appellant,

v.

Catherine CHRISTMAN, Personal Representative of the Estate of Larry Christman, Appellee.

No. 89–1370.

United States Court of Appeals, Federal Circuit.

April 13, 1990.

Allan Zelnick, of Weiss Dawid Fross Zelnick & Lehrman, New York City, argued, for appellant. With him on the brief were Stephen F. Mohr and Glenn Mitchell.

Paul G. Juettner, of Juettner Pyle Lloyd & Verbeck, Chicago, Ill., argued, for appellee. With him on the brief was Michael Piontek.

Before BISSELL, Circuit Judge *, and BENNETT and SMITH, Senior Circuit Judges.

EDWARD S. SMITH, Senior Circuit Judge.

Person's Co., Ltd. appeals from the decision of the Patent and Trademark Office Trademark Trial and Appeal Board (Board)[1] which granted summary judgment in favor of Larry Christman and ordered the cancellation of appellant's registration[2] for the mark "PERSON'S" for various apparel items. Appellant Person's Co. seeks cancellation of Christman's registration[3] for the mark "PERSON'S" for wearing apparel on the following grounds: likelihood of confusion based on its prior foreign use, abandonment, and unfair competition within the meaning of the Paris Convention. We affirm the Board's decision.

### Background

The facts pertinent to this appeal are as follows: In 1977, Takaya Iwasaki first applied a stylized logo bearing the name "PERSON'S" to clothing in his native Ja-

---

* Judge Bissell, who died February 4, 1990, did not participate in this opinion.

1. Cancellation Proceeding No. 15,776, issued November 10, 1988.

2. Registration No. 1,354,062, issued August 13, 1985.

3. Registration No. 1,297,698, issued September 25, 1984.

pan. Two years later Iwasaki formed Person's Co., Ltd., a Japanese corporation, to market and distribute the clothing items in retail stores located in Japan.

In 1981, Larry Christman, a U.S. citizen and employee of a sportswear wholesaler, visited a Person's Co. retail store while on a business trip to Japan. Christman purchased several clothing items bearing the "PERSON'S" logo and returned with them to the United States. After consulting with legal counsel and being advised that no one had yet established a claim to the logo in the United States, Christman developed designs for his own "PERSON'S" brand sportswear line based on appellant's products he had purchased in Japan. In February 1982, Christman contracted with a clothing manufacturer to produce clothing articles with the "PERSON'S" logo attached. These clothing items were sold, beginning in April 1982, to sportswear retailers in the northwestern United States. Christman formed Team Concepts, Ltd., a Washington corporation, in May 1983 to continue merchandising his sportswear line, which had expanded to include additional articles such as shoulder bags. All the sportswear marketed by Team Concepts bore either the mark "PERSON'S" or a copy of appellant's globe logo; many of the clothing styles were apparently copied directly from appellant's designs.

In April 1983, Christman filed an application for U.S. trademark registration in an effort to protect the "PERSON'S" mark. Christman believed himself to be the exclusive owner of the right to use and register the mark in the United States and apparently had no knowledge that appellant soon intended to introduce its similar sportswear line under the identical mark in the U.S. market. Christman's registration issued in September 1984 for use on wearing apparel.

In the interim between Christman's first sale and the issuance of his registration, Person's Co., Ltd. became a well known and highly respected force in the Japanese fashion industry. The company, which had previously sold garments under the "PER-SON'S" mark only in Japan, began implementing its plan to sell goods under this mark in the United States. According to Mr. Iwasaki, purchases by buyers for resale in the United States occurred as early as November 1982. This was some seven months subsequent to Christman's first sales in the United States. Person's Co. filed an application for U.S. trademark registration in the following year, and, in 1985, engaged an export trading company to introduce its goods into the U.S. market. The registration for the mark "PER-SON'S" issued in August 1985 for use on luggage, clothing and accessories. After recording U.S. sales near 4 million dollars in 1985, Person's Co. granted California distributor Zip Zone International a license to manufacture and sell goods under the "PERSON'S" mark in the United States.

In early 1986, appellant's advertising in the U.S. became known to Christman and both parties became aware of confusion in the marketplace. Person's Co. initiated an action to cancel Christman's registration on the following grounds: (1) likelihood of confusion; (2) abandonment; and (3) unfair competition within the meaning of the Paris Convention. Christman counterclaimed and asserted prior use and likelihood of confusion as grounds for cancellation of the Person's Co. registration.

After some discovery, Christman filed a motion with the Board for summary judgment on all counts. In a well reasoned decision,[4] the Board held for Christman on the grounds that Person's use of the mark in Japan could not be used to establish priority against a "good faith" senior user in U.S. commerce. The Board found no evidence to suggest that the "PERSON'S" mark had acquired any notoriety in this country at the time of its adoption by Christman. Therefore, appellant had no reputation or goodwill upon which Christman could have intended to trade, rendering the unfair competition provisions of the Paris Convention inapplicable. The Board also found that Christman had not abandoned the mark, although sales of articles

4. 9 USPQ2d 1477.

bearing the mark were often intermittent. The Board granted summary judgment to Christman and ordered appellant's registration cancelled.

The Board held in its opinion on reconsideration that Christman had not adopted the mark in bad faith despite his appropriation of a mark in use by appellant in a foreign country. The Board adopted the view that copying a mark in use in a foreign country is not in bad faith unless the foreign mark is famous in the United States or the copying is undertaken for the purpose of interfering with the prior user's planned expansion into the United States. Person's Co. appeals and requests that this court direct the Board to enter summary judgment in its favor.

### Issues

1. Does knowledge of a mark's use outside U.S. commerce preclude good faith adoption and use of the identical mark in the United States prior to the entry of the foreign user into the domestic market?

2. Did the Board properly grant summary judgment in favor of Christman on the issue of abandonment?

### Cancellation

■ The Board may properly cancel a trademark registration within five years of issue when, e.g. (1) there is a valid ground why the trademark should not continue to be registered and (2) the party petitioning for cancellation has standing.[5] Such cancellation of the marks' registrations may be based upon any ground which could have prevented registration initially.[6] The legal issue in a cancellation proceeding is the right to register a mark,[7] which may be based on either (1) ownership of a foreign registration of the mark in question or (2) use of the mark in United States commerce.[8]

### Priority

The first ground asserted for cancellation in the present action is § 2(d) of the Lanham Act;[9] each party claims prior use of registered marks which unquestionably are confusingly similar and affixed to similar goods.

■ Section 1 of the Lanham Act[10] states that "[t]he owner of a trademark *used in commerce* may register his trademark...."[11] The term "commerce" is defined in Section 45 of the Act as ".... all commerce which may be lawfully regulated by Congress."[12] No specific Constitutional language gives Congress power to regulate trademarks, so the power of the federal government to provide for trademark registration comes only under its commerce power. The term "used in commerce" in the Lanham Act refers to a sale or transportation of goods bearing the mark in or having an effect on: (1) United States interstate commerce; (2) United States commerce with foreign nations; or (3) United States commerce with the Indian Tribes.[13]

■ In the present case, appellant Person's Co. relies on its use of the mark in Japan in an attempt to support its claim for priority in the United States. Such foreign use has no effect on U.S. commerce and cannot form the basis for a holding that appellant has priority here.[14] The concept

5. *International Order of Job's Daughters v. Lindeburg & Co.*, 727 F.2d 1087, 1091, 220 USPQ 1017, 1019 (Fed.Cir.1984).

6. *International Mobile Machs. Corp. v. International Tel. & Tel. Corp.*, 800 F.2d 1118, 1119–20, 231 USPQ 142, 142 (Fed.Cir.1986).

7. *Job's Daughters*, 727 F.2d at 1091, 220 USPQ at 1019–20.

8. 15 U.S.C. §§ 1051, 1126 (1982).

9. 15 U.S.C. § 1052(d) (1987).

10. The case at bar is decided under the provisions of the Act in force prior to the enactment of the Trademark Law Revision Act of 1988.

11. 15 U.S.C. § 1051 (1976) (emphasis added).

12. 15 U.S.C. § 1127 (1982).

13. U.S. Const. art. I, § 8, cl. 3; *The Trademark Cases*, 100 U.S. 82, 25 L.Ed. 550 (1879); 1 J. McCarthy, *Trademarks and Unfair Competition* § 5:3 (1973).

14. *See, e.g., Fuji Photo Film Co. v. Shinohara Shoji Kabushiki Kaisha*, 754 F.2d 591, 599, 225

of territoriality is basic to trademark law; trademark rights exist in each country solely according to that country's statutory scheme.[15] Christman was the first to use the mark in United States commerce and the first to obtain a federal registration thereon. Appellant has no basis upon which to claim priority and is the junior user under these facts.[16]

### Bad Faith

■ Appellant vigorously asserts that Christman's adoption and use of the mark in the United States subsequent to Person's Co.'s adoption in Japan is tainted with "bad faith" and that the priority in the United States obtained thereby is insufficient to establish rights superior to those arising from Person's Co.'s prior adoption in a foreign country. Relying on *Woman's World Shops, Inc. v. Lane Bryant, Inc.,*[17] Person's Co. argues that a "remote junior user" of a mark obtains no right superior to the "senior user" if the "junior user" has adopted the mark with knowledge of the "senior user's" prior use.[18] In *Woman's World*, the senior user utilized the mark within a limited geographical area. A junior user from a different geographical area of the United States sought unrestricted federal registration for a nearly identical mark, with the exception to its virtually exclusive rights being those of the known senior user. The Board held that

such an appropriation with knowledge failed to satisfy the good faith requirements of the Lanham Act and denied the concurrent use rights sought by the junior user.[19] Person's Co. cites *Woman's World* for the proposition that a junior user's adoption and use of a mark with knowledge of another's prior use constitutes bad faith. It is urged that this principle is equitable in nature and should not be limited to knowledge of use within the territory of the United States.

While the facts of the present case are analogous to those in *Woman's World*, the case is distinguishable in one significant respect. In *Woman's World*, the first use of the mark by both the junior and senior users was in United States commerce. In the case at bar, appellant Person's Co., while first to adopt the mark, was not the first user in the United States. Christman is the senior user, and we are aware of no case where a senior user has been charged with bad faith. The concept of bad faith adoption applies to remote junior users seeking concurrent use registrations; in such cases, the likelihood of customer confusion in the remote area may be presumed from proof of the junior user's knowledge.[20] In the present case, when Christman initiated use of the mark, Person's Co. had not yet entered U.S. commerce. The Person's Co. had no goodwill in the United States and the "PERSON'S" mark had no

USPQ 540, 546 (5th Cir.1985); *Scholastic, Inc. v. Macmillan, Inc.,* 650 F.Supp. 866, 873 n. 6, 2 USPQ2d 1191, 1196 n. 6 (S.D.N.Y.1987); *Techex, Ltd. v. Dvorkovitz,* 220 USPQ 81, 83 (TTAB 1983).

15. *Fuji Photo Film,* 754 F.2d at 599, 225 USPQ at 546 (*citing Ingenohl v. Olsen & Co.,* 273 U.S. 541, 544, 47 S.Ct. 451, 452, 71 L.Ed. 762 (1927)).

16. Section 44 of the Lanham Act, 15 U.S.C. § 1126 (1982), permits qualified foreign applicants who own a registered mark in their country of origin to obtain a U.S. trademark registration without alleging actual use in U.S. commerce. If a U.S. application is filed within six months of the filing of the foreign application, such U.S. registration will be accorded the same force and effect as if filed in the United States on the same date on which the application was first filed in the foreign country. The statutory scheme set forth in § 44 is in place to lower barriers to entry and assist foreign applicants in

establishing business goodwill in the United States. Person's Co. does not assert rights under § 44, which if properly applied, might have been used to secure priority over Christman.

17. 5 USPQ2d 1985 (TTAB 1985).

18. Appellant repeatedly makes reference to a "world economy" and considers Christman to be the remote junior user of the mark. Although Person's did adopt the mark in Japan prior to Christman's use in United States commerce, the use in Japan cannot be relied upon to acquire U.S. trademark rights. Christman is the senior user as that term is defined under U.S. trademark law.

19. 5 USPQ2d at 1988.

20. *See* 2 J. McCarthy, *Trademarks and Unfair Competition* § 26:4 (2d ed. 1984); Restatement of Torts § 732 comment a (1938).

reputation here. Appellant's argument ignores the territorial nature of trademark rights.

■ Appellant next asserts that Christman's knowledge of its prior use of the mark in Japan should preclude his acquisition of superior trademark rights in the United States. The Board found that, at the time of registration, Christman was not aware of appellant's intention to enter the U.S. clothing and accessories market in the future. Christman obtained a trademark search on the "PERSON'S" mark and an opinion of competent counsel that the mark was "available" in the United States. Since Appellant had taken no steps to secure registration of the mark in the United States, Christman was aware of no basis for Person's Co. to assert superior rights to use and registration here. Appellant would have us infer bad faith adoption because of Christman's awareness of its use of the mark in Japan, but an inference of bad faith requires something more than mere knowledge of prior use of a similar mark in a foreign country.[21]

As the Board noted below, Christman's prior use in U.S. commerce cannot be discounted solely because he was aware of appellant's use of the mark in Japan. While adoption of a mark with knowledge of a prior actual *user* in U.S. commerce may give rise to cognizable equities as between the parties, no such equities may be based upon knowledge of a similar mark's existence or on a problematical intent to use such a similar mark in the future.[22] Knowledge of a foreign use does not preclude good faith adoption and use in the United States. While there is some case law supporting a finding of bad faith where

(1) the foreign mark is famous here[23] or (2) the use is a nominal one made solely to block the prior foreign user's planned expansion into the United States,[24] as the Board correctly found, neither of these circumstances is present in this case.

We agree with the Board's conclusion that Christman's adoption and use of the mark were in good faith. Christman's adoption of the mark occurred at a time when appellant had not yet entered U.S. commerce; therefore, no prior user was in place to give Christman notice of appellant's potential U.S. rights. Christman's conduct in appropriating and using appellant's mark in a market where he believed the Japanese manufacturer did not compete can hardly be considered unscrupulous commercial conduct.[25] Christman adopted the trademark being used by appellant in Japan, but appellant has not identified any aspect of U.S. trademark law violated by such action. Trademark rights under the Lanham Act arise solely out of use of the mark in U.S. commerce or from ownership of a foreign registration thereon; "[t]he law pertaining to registration of trademarks does not regulate all aspects of business morality."[26] When the law has been crafted with the clarity of crystal, it also has the qualities of a glass slipper: it cannot be shoe-horned onto facts it does not fit, no matter how appealing they might appear.

## The Paris Convention

■ Appellant next claims that Christman's adoption and use of the "PERSON'S" mark in the United States constitutes unfair competition under Articles 6 *bis* and 10 *bis* of the Paris Convention.[27] It

21. *Cf. Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1565, 4 USPQ2d 1793, 1798 (Fed.Cir.1987).

22. *Sweats Fashions*, 833 F.2d at 1565, 4 USPQ2d at 1798; *Selfway, Inc. v. Travelers Petroleum, Inc.*, 579 F.2d 75, 79, 198 USPQ 271, 275 (CCPA 1978).

23. *See, e.g., Vaudable v. Montmartre, Inc.*, 20 Misc.2d 757, 193 N.Y.S.2d 332, 123 USPQ 357 (N.Y.Sup.Ct.1959); *Mother's Restaurants, Inc. v. Mother's Other Kitchen, Inc.*, 218 USPQ 1046 (TTAB 1983).

24. *See Davidoff Extension, S.A. v. Davidoff Int'l.*, 221 USPQ 465 (S.D.Fla.1983).

25. *See Bulk Mfg. Co. v. Schoenbach Prod. Co.*, 208 USPQ 664, 667–68 (S.D.N.Y.1980).

26. *Selfway*, 579 F.2d at 79, 198 USPQ at 275.

27. Paris Convention for the Protection of Industrial Property, July 14, 1967, 21 U.S.T. 1628, T.I.A.S. No. 6923.

is well settled that the Trademark Trial and Appeal Board cannot adjudicate unfair competition issues in a cancellation or opposition proceeding.[28] The Board's function is to determine whether there is a right to secure or to maintain a registration.[29]

### Abandonment

■ Appellant next seeks to cancel Christman's registration of the "PERSON'S" mark on the ground of abandonment, citing (1) the intermittent sales registered by Christman's corporation, Team Concepts, Ltd., during the years 1983–87; (2) the paucity of orders for replenishment of corporate inventory during the same period; and (3) the lack of significant sales by Team Concepts to commercial outlets. Specifically, appellant argues that the Board erred in failing to draw all permissible inferences from the record in its favor on the abandonment issue.

The burden on the moving party in a summary judgment proceeding under Fed. R.Civ.P. 56[30] may be discharged by showing that there is an absence of evidence to support the nonmoving party's case.[31] Section 45 of the Lanham Act[32] provides in pertinent part that a mark shall be deemed abandoned "when its use has been discontinued with intent not to resume. Intent not to resume may be inferred from circumstances." Person's Co. carries the burden of establishing the case for cancellation on grounds of abandonment by a preponderance of the evidence.[33]

Appellant correctly asserts that the critical issue here is whether Christman's actions demonstrate a cessation of commercial use and an intent not to resume such use. Although sales by Christman and his corporation Team Concepts, Ltd. were often intermittent and the inventory of the corporation remained small, such circumstances do not necessarily imply abandonment. There is also no rule of law that the owner of a trademark must reach a particular level of success, measured either by the size of the market or by its own level of sales, to avoid abandoning a mark.[34] After consideration of the record as a whole, the Board found nothing to support appellant's argument that Christman abandoned the mark. We agree with the Board's conclusion that, as a matter of law, the evidence submitted by appellant was insufficient to raise an issue of fact of abandonment of the "PERSON'S" mark.

### Conclusion

In *United Drug Co. v. Rectanus Co.*,[35] the Supreme Court of the United States determined that "[t]here is no such thing as property in a trademark except as a right appurtenant to an established business or trade in connection with which the mark is employed.... [I]ts function is simply to designate the goods as the product of a particular trader and to protect his goodwill against the sale of another's product as his; and it is not the subject of property except in connection with an existing business."[36] In the present case, appellant failed to secure protection for its mark through use in U.S. commerce; therefore, no established business or product line was in place from which trademark rights could

---

28. See *Knickerbocker Toy Co. v. Faultless Starch Co.*, 467 F.2d 501, 509, 175 USPQ 417, 423, 59 CCPA 1300 (CCPA 1972).

29. *Wallpaper Mfrs., Ltd. v. Crown Wallcovering Corp.*, 680 F.2d 755, 767, 214 USPQ 327, 336 (CCPA 1982).

30. Fed.R.Civ.P. 56 is made applicable to proceedings before the Board by 37 C.F.R. § 2.116(a) (1987).

31. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

32. 15 U.S.C. § 1127.

33. *Cerveceria Centroamericana, S.A. v. Cerveceria India, Inc.*, 892 F.2d 1021, 1023, 13 USPQ2d 1307, 1309–10 (Fed.Cir.1989).

34. *Wallpaper Mfrs.*, 680 F.2d at 759, 214 USPQ at 329.

35. 248 U.S. 90, 39 S.Ct. 48, 63 L.Ed. 141 (1918).

36. 248 U.S. at 97, 39 S.Ct. at 50–51. It goes without saying that the underlying policy upon which this function is grounded is the protection of the public in its purchase of a service or product. *See, e.g. In re Canadian Pacific Ltd.*, 754 F.2d 992, 994, 224 USPQ 971, 973 (Fed.Cir. 1985).

arise. Christman was the first to use the mark in U.S. commerce. This first use was not tainted with bad faith by Christman's mere knowledge of appellant's prior foreign use, so the Board's conclusion on the issue of priority was correct. Appellant also raises no factual dispute which is material to the resolution of the issue of abandonment. Accordingly, the grant of summary judgment was entirely in order, and the Board's decision is affirmed.

AFFIRMED.