This Opinion Is a
Precedent of the TTAB

Mailed: February 19, 2020

UNITED STATES PATENT AND TRADEMARK OFFICE

‒‒‒‒

Trademark Trial and Appeal Board

‒‒‒‒

*Hole In 1 Drinks, Inc.*
*v.*
*Michael Lajtay*

‒‒‒‒

Cancellation No. 92065860

‒‒‒‒

John D. Tran of Rhema Law Group, P.C. for Hole In 1 Drinks, Inc.

Michael Lajtay, pro se.

‒‒‒‒

Before Bergsman, Kuczma and Pologeorgis, Administrative Trademark Judges.

Opinion by Bergsman, Administrative Trademark Judge:

Hole In 1 Drinks, Inc. (Petitioner) filed a Petition to Cancel the registration for the mark HOLE IN ONE (in standard characters) for "sports drinks, namely, performance and recovery drinks; sports drinks," in Class 32, owned by Michael Lajtay (Respondent).[1]

---

[1] Registration No. 4942535, registered April 19, 2016 on the Principal Register. The registration is based on application Serial No. 86513234, filed on January 24, 2015, initially under Section 1(b) of the Trademark Act, 15 U.S.C. § 1051(b), based on Respondent's claim of a bona fide intent to use the mark in commerce. Respondent filed a Statement of Use on January 23, 2016, claiming March 18, 2015 as both the date of first use and the date of first use in commerce.

Petitioner alleges the following grounds for cancellation: (1) likelihood of confusion under Section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d); (2) the underlying application that formed the basis of Respondent's registration is void ab initio because Respondent did not own the mark when he filed the underlying application for registration; (3) abandonment; (4) nonuse of the mark as of the filing date of the statement of use of the subject registration's underlying application; and (5) fraud. In support of its claims, Petitioner alleges that it owns two pending applications for the mark HOLE IN ONE, both purportedly for "sports drinks and dietary supplement drink mixes" and that the USPTO has refused to register its pending applications under Section 2(d) because of Respondent's registration.

Respondent, in his Answer, denied the salient allegations in the Petition for Cancellation.

## I. Preliminary Issues

### A. Respondent assumes the risk of representing himself.

A party may represent itself in a cancellation proceeding. 37 C.F.R. § 11.14(e) ("an individual may appear in a trademark or other non-patent matter in his own or her own behalf."). "However, because the governing practices and procedures in proceedings before the Board are quite technical and highly specialized, it is strongly recommended that an attorney knowledgeable about trademark law represent a party." TRADEMARK TRIAL AND APPEAL BOARD MANUAL OF PROCEDURE (TBMP) § 114.01 (2019). In this regard, after Respondent's counsel withdrew, the Board advised Respondent to secure the services of an attorney who is familiar with Board

proceedings.[2] Nevertheless, Respondent elected to represent himself.[3] Strict compliance with the Trademark Rules of Practice, and where applicable the Federal Rules of Civil Procedure and the Federal Rules of Evidence, is required of all parties, whether or not they are represented by counsel. *McDermott v. S.F. Women's Motorcycle Contingent*, 81 USPQ2d 1212, n.2 (TTAB 2006), *aff'd unpub'd*, 240 Fed. Appx. 865 (Fed. Cir. 2007). Accordingly, Respondent, a layperson unfamiliar with the Trademark Rules of Practice, has assumed the responsibility and risk of representing himself.

### B. Petitioner's motion to strike Respondent's trial brief and attached exhibits.

Respondent filed a single-spaced brief with numerous exhibits attached.[4] Petitioner filed a motion to strike Respondent's brief and the accompanying exhibits on the grounds that Respondent's brief fails to comply with the formatting requirements set forth in Trademark Rules 2.128 and 2.126, 37 C.F.R. §§ 2.126 and 2.128, and because Respondent improperly attached evidence to the brief.[5] In response, Respondent filed, in essence, an ad hominem attack on Petitioner and Petitioner's counsel.[6]

---

[2] 7 TTABVUE 2. Petitioner's counsel also recommended that Respondent obtain the services of counsel. Respondent's Discovery Dep., p. 120 (22 TTABVUE 272).

[3] 8 TTABVUE.

[4] 35 TTABVUE.

[5] 38 TTABVUE.

[6] 39 TTABVUE.

Trademark Rule 2.121(a), 37 C.F.R. § 2.121(a), provides, in pertinent part, the following:

> The Trademark Trial and Appeal Board will issue a trial order setting a deadline for each party's required pretrial disclosures and assigning to each party its time for taking testimony and presenting evidence ("testimony period"). **No testimony shall be taken or evidence presented except during the times assigned**, unless by stipulation of the parties approved by the Board, or upon motion granted by the Board, or by order of the Board. (Emphasis added).

In other words, a party may introduce testimony and evidence only during its assigned testimony period. *See Baseball Am. Inc. v. Powerplay Sports*, 71 USPQ2d 1844, 1846 n.8 (TTAB 2004) (documentary evidence submitted outside assigned testimony period given no consideration); *M-Tek Inc. v. CVP Sys. Inc.*, 17 USPQ2d 1070, 1072 (TTAB 1990) (untimely deposition stricken); *Fischer GmbH. v. Molnar & Co.*, 203 USPQ 861, 867 (TTAB 1979) (discovery deposition of non-party inadmissible as evidence under a notice of reliance filed by one party without express or implied consent of adverse party; should have taken deposition during trial period or at least moved to take trial testimony prior to assigned testimony period).

"A brief may not be used as a vehicle for the introduction of evidence." TBMP § 801.01. The Board will not consider evidence and other evidentiary materials attached to the briefs unless they were properly made of record during the time assigned for taking testimony. *See, e.g.*, *Syngenta Crop Protection, Inc. v. Bio-Chek, LLC*, 90 USPQ2d 1112, 1116 (TTAB 2009); *Bass Pro Trademarks LLC v. Sportsman Warehouse, Inc.*, 89 USPQ2d 1844, 1848 (TTAB 2008); *Life Zone Inc. v. Middleman Group Inc.*, 87 USPQ2d 1953, 1955 (TTAB 2008).

We grant Petitioner's motion to the extent that we will not consider the evidence attached to Respondent's brief. However, because the brief is only seven pages in length and clearly not an attempt to circumvent the Board's page limits, we deny Petitioner's motion to the extent that the Board, in its discretion, will consider Respondent's arguments in his brief, for whatever persuasive value they may have despite his failure to properly format the brief.

## II. The Record.

The record includes the pleadings and, by operation of Trademark Rule 2.122(b), 37 C.F.R. § 2.122(b), Respondent's registration file that is the subject of the Petition for Cancellation. The parties introduced the testimony and evidence listed below:

### A. Petitioner's testimony and evidence.

1. Notice of reliance on Petitioner's Trademark Assignment Agreement and Recordation of Assignment for the mark HOLE IN ONE in standard characters, application Serial No. 87077919 (printed directly from the USPTO Trademark Assignment database);[7]

2. Notice of reliance on Petitioner's Trademark Assignment Agreement and Recordation of Assignment for the HOLE IN ONE and design mark, application Serial No. 87109399 (printed directly from the USPTO Trademark Assignment database);[8]

3. Notice of reliance on Respondent's responses to Petitioner's first set of interrogatories;[9]

4. Notice of reliance on Respondent's responses to Petitioner's first set of requests for production of documents;[10]

---

[7] 22 TTABVUE 7-8.

[8] 22 TTABVUE 10-11.

[9] 22 TTABVUE 13-26.

[10] 22 TTABVUE 34-48. Generally, the requesting party may not introduce the documents produced through a notice of reliance unless the responding party has authenticated them by an admission or stipulation. Trademark Rule 2.120(k)(3)(ii), 37 C.F.R. § 2.120(3)(ii); TBMP

5. Notice of reliance on a copy of the file history for Petitioner's application Serial No. 87077919 for the mark HOLE IN ONE in standard characters from the USPTO TSDR database;[11]

6. Notice of reliance on a copy of the file history for Petitioner's application Serial No. 87109399 for the mark HOLE IN ONE and design from the USPTO TSDR database;[12]

7. Notice of reliance on the discovery deposition of Respondent;[13]

8. Testimony declaration of Darryl Cazares, Petitioner's President;[14] and

9. The rebuttal testimony declaration of Ignacio Cortes, a restaurant owner.[15]

## B. Respondent's testimony and evidence.

1. Testimony declaration of Mark Mitchell, a housing contractor and acquaintance of both Darryl Cazares and Respondent;[16]

2. Respondent's first testimony declaration;[17]

---

§ 704.11. In this case, Respondent authenticated his document production by referring to the document production in his responses to Petitioner's interrogatories. *See e.g.,* Respondent's response to interrogatory Nos. 4, 7, 14, and 22. 22 TTABVUE 17, 18, 20, 24-25. However, because Petitioner failed to introduce into evidence the documents Respondent produced, we do not have any documents to review.

[11] 22 TTABVUE 50-107.

[12] 22 TTABVUE 109-149.

[13] 22 TTABVUE 153-396.

[14] 23 TTABVUE.

[15] 33 TTABVUE.

[16] 26 TTABVUE.

[17] 27 TTABVUE 3-6. This document is captioned "Respondent's Pre-Trial Disclosures" but it is more in the nature of a testimony declaration. *See Of Counsel Inc. v. Strictly of Counsel Chartered*, 21 USPQ2d 1555, 1556 n.2 (TTAB 1991) (objection to timeliness of testimony deposition taken two days before period opened, but raised for the first time in brief, waived). We note that the document is not signed under oath. However, because Respondent is representing himself, he is bound by the provisions of Rule 11 of the Federal Rules of Civil Procedure, we will equate it to a declaration and consider Respondent's statement for whatever probative value it may have.

3. Testimony declaration of Daniel Barrett, the owner of Market Print Plus, a printing company;[18]

4. Testimony declaration of Anthony Walker, an acquaintance of Respondent;[19]

5. Respondent's second testimony declaration;[20] and

6. Respondent's third testimony declaration.[21]

### III.      Standing

Standing is a threshold issue in every inter partes case. *See Empresa Cubana Del Tabaco v. Gen. Cigar Co.*, 753 F.3d 1270, 111 USPQ2d 1058, 1062 (Fed. Cir. 2014); *John W. Carson Found. v. Toilets.com Inc.*, 94 USPQ2d 1942, 1945 (TTAB 2010). To establish standing in an opposition or cancellation proceeding, a plaintiff must prove that it has a "real interest" in the proceeding and a "reasonable" basis for its belief of damage. *See Empresa Cubana*, 111 USPQ2d at 1062; *Ritchie v. Simpson*, 170 F.3d 1092, 50 USPQ2d 1023, 1025 (Fed. Cir. 1999); *Lipton Indus., Inc. v. Ralston Purina Co.*, 670 F.2d 1024, 213 USPQ 185, 189 (TTAB 1982).

Respondent's Registration No. 4942535 for the mark HOLE IN ONE, in standard characters, has been cited as bar to the registration of Petitioner's application Serial No. 87077919 for the mark HOLE IN ONE, in standard characters, and application Serial No. 87109399 for the mark HOLE IN ONE and design.[22] Petitioner's evidence

---

[18] 27 TTABVUE 7.

[19] 27 TTABVUE 9.

[20] 31 TTABVUE.

[21] 32 TTABVUE.

[22] 22 TTABVUE 50-51, 65, 110.

of its pending trademark applications, and evidence that these applications have been refused registration by the USPTO based on Respondent's registration demonstrate that Petitioner has a real interest in the proceeding and a reasonable belief that it would be damaged by the continued registration of Respondent's mark, thus establishing its standing.[23] *Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 55 USPQ2d 1842, 1844 (Fed. Cir. 2000); *Lipton Indus. v. Ralston Purina*, 213 USPQ at 189; *Kallmni v. Khan*, 101 USPQ2d 1864, 1865 (TTAB 2012); *Life Zone Inc.*, 87 USPQ2d at 1959 (standing found based on opposer's ownership of pending trademark application and Office action which raised defendant's application as a potential bar to registration).

Once a plaintiff has shown standing on one ground, it has the right to assert any other ground in a cancellation proceeding. *See Poly-America, L.P. v. Ill. Tool Works Inc.*, 124 USPQ2d 1508, 1512 (TTAB 2017) (if petitioner can show standing on the ground of functionality, it can assert any other grounds, including abandonment); *Azeka Bldg. Corp. v. Azeka*, 122 USPQ2d 1477, 1479 (TTAB 2017) (standing established based on surname claim sufficient to establish standing for any other ground); *Luxco, Inc. v. Consejo Regulador del Tequila, A.C.*, 121 USPQ2d 1477, 1481 (TTAB 2017) (opposer established its standing as to genericness ground of certification mark and was entitled to assert any other ground).

---

[23] The evidence of record further demonstrates that the prosecution of Petitioner's pending applications has been suspended pending the final disposition of this cancellation proceeding.

## IV. Background

Respondent testified that he started the HOLE-IN-ONE project in January 2015.[24] Shortly, thereafter, on January 24, 2015, Respondent filed, in his own name, application Serial No. 86513234 for the mark HOLE IN ONE, in standard character form, for "sports drinks, namely, performance and recovery drinks; sports drinks" under Section 1(b) of the Trademark Act, 15 U.S.C. § 1051(b), based on Respondent's claim of a bona fide intent to use the mark in commerce.

According to Darryl Cazares, Petitioner's President, "In or about January 2015, [Respondent] and I, entered into a business relationship, as business partners, for the purpose of creating, developing, marketing, and selling a sports drink beverage targeted to the golf industry called 'HOLE IN ONE.'"[25] In an email dated January 31, 2015, Respondent wrote to Tom Stamatis, a consultant writing a business plan for "Hole-In-One Beverages LLC," that "Darryl is my business partner in this endeavor and he is funding the initial stages of Hole In One."[26] Respondent and Tom Stamatis together wrote a business plan stating the following:[27]

> **Hole in One Drinks, Inc**. – manufacturer of Hole in One Performance Drink Beverages
>
> Based in Huntington Beach "Surf City", California, Hole in One, Inc. is a California Corporation and is the exclusive manufacturer and marketer of **Hole in One Performance Drink** branded beverages. The company was founded by product formulator Michael Lajtay

---

[24] Respondent's Discovery Dep., p. 52 (22 TTABVUE 204).

[25] Cazares Testimony Decl. ¶9 (23 TTABVUE 5).

[26] *Id*. at ¶9 and Exhibit E (23 TTABVUE 5 and 93).

[27] Respondent's Discovery Dep., pp. 157, 159 and Exhibit 3 (22 TTABVUE 309, 311, 329-338).

(pronounced "Lay-Tay") and Newport Beach business man [sic], **entrepreneur/investor, Darryl Cazares**.[28]

Respondent and Stamatis's business plan also stated the following about the HOLE IN ONE trademark application (emphasis in the original):

> **On January 24, 2015, a U.S. federal trademark registration [sic] was filed for HOLE IN ONE by Darryl L. Cazares and Michael Lajtay of Huntington Beach, CA 92648. The USPTO has given the HOLE IN ONE trademark serial number 86513234.**[29]

On March 6, 2015, Cazares filed "articles of organization" with the California Secretary of State to establish Hole-In-One Drinks, LLC. According to the articles of organization, Cazares and Respondent are co-managers.[30] Respondent confirmed that Hole-In-One Drinks, LLC was formed in March 2015.[31] In fact, in the Statement of Information that Respondent filed with the California Secretary of State for Hole-In-One Drinks, LLC, Respondent listed Darryl Cazares as a co-manager.[32] Eventually, Respondent conceded that Darryl Cazares was "a co-founder, a business partner, in the Hole-In-One endeavor."[33] Respondent does not recall ever terminating

---

[28] *Id*. at Exhibit 3 (22 TTABVUE 330).

[29] *Id*. at Exhibit 3 (22 TTABVUE 331).

[30] Cazares Testimony Decl. ¶11 and Exhibit F (23 TTABVUE 5 and 95). Cazares Exhibit F contradicts Respondent's testimony that Respondent "created Hole-In-One Drinks, LLC." Respondent's Discovery Dep., p. 10 (22 TTABVUE 162).

[31] Respondent's Discovery Dep., p. 17 (22 TTABVUE 169).

[32] Respondent's Discovery Dep., p. 18 and Exhibit 1 (22 TTABVUE 170 and 325); *see also id*. at pp. 87-88 (22 TTABVUE 239-240) (acknowledging that Respondent and Cazares held themselves out as business partners regarding HOLE IN ONE).

[33] Respondent's Discovery Dep., p. 23 (22 TTABVUE 175) (Q. Was Darryl Cazares a co-founder, a business partner in the Hole-In-One endeavor in the beginning? It's yes or no. A. In a minority capacity, potentially yes.); *see also id*. at pp. 38-39 and 40 (22 TTABVUE 190-191 and 192).

the membership of Cazares in Hole-In-One Drinks, LLC.[34] In addition, Respondent testified that Gene Slusieuwicz is a shareholder in Hole-In-One Drinks, LLC.[35]

After filing the trademark application for HOLE IN ONE, Respondent worked with Matt Rae, a graphic designer, to create labels for the product.[36] Respondent testified that Matt Rae sent invoices to Respondent in the name of Hole-In-One or to Jugular, Inc. (by mistake), another company owned by Respondent. Respondent did not recall any invoices in the name of Respondent personally or that Respondent ever paid any invoices from Rae personally because Hole-In-One Drinks, LLC or Jugular, Inc. paid the invoices.[37]

As of April 3, 2015, Respondent began to shrink-wrap beverage bottles with HOLE-IN-ONE labels.[38] Respondent testified, "the bottles were sold almost immediately after they were produced"[39] and "without question, I started selling drinks in April 2015."[40] Respondent claims to have been at every sale.[41] However,

---

[34] Respondent's Discovery Dep., p. 28 (22 TTABVUE 180).

[35] Respondent's Discovery Dep., pp. 99-102 (22 TTABVUE 251-254).

[36] Respondent's Discovery Dep., pp. 53-54 (22 TTABVUE 205-206).

[37] Respondent's Discovery Dep., pp. 13-14 and 75 (22 TTABVUE 165-166 and 227); *see also id.* at p. 73 (22 TTABVUE 225) (Matt Rae mistakenly identified Jugular, Inc. on an invoice meant for Hole-In-One Drinks, LLC).

[38] Respondent's Discovery Dep., p. 57 (22 TTABVUE 209).

[39] Respondent's Discovery Dep., p. 60 (22 TTABVUE 212).

[40] Respondent's Discovery Dep., p. 61 (22 TTABVUE 213); *see also id.* at pp. 71 (22 TTABVUE 223); *id.* at pp. 123-124 (22 TTABVUE 275-277) (April 8, 2015 was the first date the drink was in a saleable condition).

[41] Respondent's Discovery Dep., p. 61 (22 TTABVUE 213).

what Respondent testified to as a "typical invoice" identified Hole-In-One Drinks, LLC as the "producer."[42]

> Q. So Hole-In-One Drinks, LLC was always the one selling the products?
>
> A. Yeah.[43]

Respondent testified that invoices for HOLE IN ONE sports drink would say "Hole-In-One Drinks, LLC."[44] The evidence of record also includes a purchase order from Advantage Link Sports Management identifying Hole-In-One Beverages, Inc. as the vendor.[45] Customers paid Hole-In-One Drinks, LLC.[46]

> Q. It [HOLE IN ONE] was always sold, marketed, or distributed under Hole-In-One Drinks, LLC?
>
> A. Yeah.[47]

In sum, Respondent filed the intent-to-use application in his own name, even though Respondent and Darryl Cazares were negotiating or had already agreed to form Hole-In-One Drinks, LLC, the entity through which they intended to sell HOLE IN ONE branded beverages.

---

[42] Respondent's Discovery Dep., pp. 65-66 and 81 and Exhibit 10 (22 TTABVUE 217-218, 233 and 353).

[43] Respondent's Discovery Dep., p. 67 (22 TTABVUE 219).

[44] Respondent's Discovery Dep., p. 80 (22 TTABVUE 232).

[45] Respondent's Discovery Dep. Exhibit 12 (22 TTABVUE 356). Respondent testified that Advantage Link Sports Management was his account so we assume that Hole-In-One Beverages, Inc. should be Hole-In-One Drinks, LLC. Respondent's Discovery Dep., p. 69 (22 TTABVUE 221). Subsequently, Respondent testified that he deposited the payment in the Hole-In-One Drinks, LLC account. Respondent's Discovery Dep., p. 70 (22 TTABVUE 222).

[46] Respondent's Discovery Dep., p. 133 (22 TTABVUE 285).

[47] Respondent's Discovery Dep., pp. 154-155 (22 TTABVUE 306-307).

**V. Whether the underlying application of Respondent's registration is subject to a claim that it is void ab initio on the ground that Respondent was not the owner of the HOLE IN ONE mark at the time Respondent filed the application for registration?**

The petition raises a claim that Respondent did not "own" the application at issue when he filed it, and that therefore the application is void ab initio.[48] The allegations pertinent to this claim recite that the application was filed under Section 1(a).[49] But that is mistaken; the application was filed under Section 1(b).[50] Section 1(b) of the Trademark Act, 15 U.S.C. § 1051(b), provides as follows:

> A person who has a bona fide intention, under circumstances showing the good faith of such person, to use a trademark in commerce may request registration of its trademark on the principal register hereby established by paying the prescribed fee and filing in the Patent and Trademark Office an application and a verified statement, in such form as may be prescribed by the Director.

Section 1(b) concerns intent-to-use applications. Because in such an application the mark has not yet been used [or the applicant is not claiming use of the mark], and because ownership of a mark arises through use of the mark, Section 1(b) does not refer to "the owner of a trademark," as does Section 1(a) of the Trademark Act which deals with use based applications. Respondent's underlying application at issue in this case was originally filed as an intent-to-use application. Had the application been a use-based application, and had the application been filed in the name of Respondent (an individual) when the owner of the mark HOLE IN ONE was another entity such

---

[48] 1 TTABVUE ¶¶ 5-7.

[49] 1 TTABVUE ¶ 5.

[50] *See* n.1, *supra.*

as Respondent and Darryl Cazares as joint owners or Hole-In-One Drinks, LLC, then the application would have been void ab initio as having been filed in the name of someone other than the owner of the mark. *See Lyons v. Am. Coll. Of Veterinary Sports Med. & Rehab.*, 859 F.3d 1023, 123 USPQ2d 1024, 1027 (Fed. Cir. 2017); *Huang v. Tzu Wei Chen Food Co.*, 849 F.2d 1458, 7 USPQ2d 1335 (Fed. Cir. 1988) (application held void because it was filed in the name of an applicant who was not the owner of the mark at the time of filing); *In re Tong Yang Cement Corp.,* 19 USPQ2d 1689 (TTAB 1991) (application held void ab initio because it was not filed in the name of the owner of the mark).

There is no statutory requirement that the filer of an intent-to-use application be the owner of the mark at the time it files an intent-to-use application; rather, the filer avers that: "The signatory believes that the applicant is entitled to use the mark in commerce. The applicant has a bona fide intention to use the mark in commerce on or in connection with the goods/services in the application." Therefore, a claim that an applicant, or in this case Respondent, was not the rightful "owner" of the mark when the application was filed is not available when the application, as originally filed, is not based on use of the mark in commerce. *Norris v. PAVE: Promoting Awareness, Victim Empowerment,* 2019 USPQ2d 370880 *4 (TTAB 2019). Thus, there is technically no statutory basis for Petitioner's nonownership claim and we give no further consideration to Opposer's lack of ownership claim.

However, under the circumstances of this case, Petitioner could have asserted that Respondent did not have a right to file his intent-to-use application based on a lack

of a bona fide intent to use the mark in commerce as of the filing date of the intent-to-use application.

> "Because a bona fide intent to use the mark in commerce is a statutory requirement of a valid intent-to-use trademark application under Section 1(b), the lack of such intent is a basis on which an opposer may challenge an applicant's mark." *M.Z. Berger & Co. v. Swatch AG*, 787 F.3d 1368, 114 USPQ2d 1892, 1898 (Fed. Cir. 2015). By analogy to non-ownership claims, where the application is based on intent to use under Section 1(b) of the Trademark Act, and two parties are claiming superior rights based on shared circumstances, the question is which entity or individual had the bona fide intent. *Am. Forests v. Sanders*, 54 USPQ2d 1860, 1864 (TTAB 1999) (holding an intent-to-use application filed by an individual void, where the entity that had a bona fide intention to use the mark in commerce on the application filing date was a partnership composed of the individual applicant and her husband), *aff'd mem.*, 232 F.3d 907 (Fed. Cir. 2000). In other words, an opposer may assert that an applicant does not have a right to file the intent-to-use application based on a lack of intent to use the mark in commerce in connection with the applied-for goods or services.

*Norris v. PAVE*, 2019 USPQ2d at *5. That is, the Board has previously held that the same operative facts regarding parties claiming superior rights based on shared circumstances may support different claims depending on whether they arise in a use-based application, in which case the appropriate claim is lack of ownership, or in an intent-to-use application, in which case the appropriate claim is lack of bona fide intent to use.

### VI. Whether the parties tried by implied consent a claim that Respondent alone did not have a bona fide intent to use the HOLE IN ONE mark in commerce?

Fed. R. Civ. P. 15(b), made applicable to Board proceedings by Trademark Rule 2.116(a), 37 C.F.R. § 2.116(a), provides, in pertinent part, that when issues not raised

by the pleadings are tried by the express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Respondent has not expressly consented to the trial of the issue of whether he had a right to file the application due to a lack of a bona fide intent to use. On the other hand, implied consent to the trial of an unpleaded issue can be found only where the non-offering party (1) raised no objection to the introduction of evidence on the issue, and (2) was fairly apprised that the evidence was being offered in support of the issue. TBMP § 507.03(b). "[T]he Board has found that an issue was tried by implied consent where the non-offering party raised no objection to the introduction of evidence on the issue and in its brief treated the evidence as being of record, or discussed the issue in its brief as though it were part of the pleading." *Morgan Creek Prods., Inc. v. Foria Int'l, Inc.*, 91 USPQ2d 1134, 1138 (TTAB 2009).

As noted above, Petitioner alleged that Respondent was not the rightful owner of the HOLE IN ONE mark at the time he filed the application.

> (6) The true facts are that the HOLE IN ONE mark in the Registration at issue was actually owned by a partnership between Registrant "MICHAEL LATJAY" [sic] and "DARRYL CAZARES," … In particular, both Mr. Latjay [sic] and Mr. Cazares agreed to own the HOLE IN ONE mark jointly. However, Mr. Latjay [sic] proceeded to file and obtain the Registration at issue in his sole name without the consent and knowledge of Mr. Cazares. …

> (7) Clearly, only the owner of a mark may register the mark and the Registrant, Michael Latjay [sic], was not the sole owner of the HOLE IN ONE mark at the time of filing. Because the Registration at issue should have listed both Michael Latjay [sic] and Darryl Cazares as either joint

> applicants or as a partnership, the Registration at issue is void *ab initio* and should be cancelled.[51]

It appears that Petitioner intended to allege that Respondent did not have a right to file the application due to lack of a bona fide intent to use the HOLE IN ONE mark by himself and that Respondent and Darryl Cazares had a bona fide intent to use the HOLE IN ONE mark as joint applicants until they formed Hole-In-One Drinks, LLC. Petitioner failed to appreciate the distinction between a use-based application and an intent-to-use application: a use-based application is filed by one who must be the **owner** of the trademark, while an intent-to-use application is filed by an entity or person who has **a bona fide intent to use** the mark in commerce. As a result, while pleading the appropriate facts for a lack of bona fide intent to use claim against Respondent's registration issuing from an intent-to-use application, Petitioner mistakenly referred to the "ownership" claim appropriate to registration issuing from a use-based application.[52] This mistake is somewhat understandable, however, because, as noted above, it was not until 2019—i.e., about two years after the petition in this proceeding was filed—that the Board held for the first time that a claim that an applicant is not the rightful "owner" of the applied-for mark is not available when the application is not based on use of the mark in commerce. *Norris v. PAVE*, 2019 USPQ2d at *4.

---

[51] Petition for Cancellation ¶¶6 and 7 (1 TTABVUE 5-6).

[52] The petition also mistakenly alleged that Respondent filed its application under Section 1(a). 1 TTABVUE ¶ 5.

Where, as here, Respondent's application, as originally filed, was based on a bona fide intent to use under Section 1(b) of the Trademark Act, and two parties are claiming rights in the same or similar mark, the issue is whether the applicant of the intent-to-use application had a bona fide intent to use the mark, not whether it owned the marks as of the filing date of the application. This difference between a use-based application and an intent-to-use application, or the proof required to succeed on a claim of non-ownership or lack of a bona fide intent-to-use claim, did not affect the litigation of this case because the operative facts are the same for both. In other words, had Petitioner properly pleaded its claim, the litigation would have proceeded unchanged. Instead of having to prove whether the owner of the mark was Respondent or Respondent and Darryl Cazares, Petitioner had to prove whether Respondent or Respondent and Darryl Cazares collectively had the bona fide intent to use the HOLE IN ONE mark. Thus, Respondent was fairly apprised that the evidence submitted in this case supported the issue of whether Respondent had the right to file the application based on his sole bona fide intent to use the mark as of the filing date of the underlying intent-to-use application, and there was no reason for Respondent to object to any testimony or evidence because it was the same testimony and evidence for either the nonownership claim or a lack of a bona fide intent-to-use claim.

In fact, Respondent introduced testimony aimed at contradicting Petitioner's claim that Darryl Cazares had an interest or bona fide intent to use the HOLE IN ONE mark at the time the underlying application was filed. Respondent testified that

there were no signed agreements between Respondent and Darryl Cazares and that Darryl Cazares never provided any consideration for an ownership interest in the HOLE IN ONE venture.[53] Mark Mitchell testified that he is "certain that [Respondent] is the rightful creator and owner of the Hole in One energy drinks."[54] Daniel Barrett testified that Respondent "created the Hole In One brand identity, trademark, packaging design and drink formula himself. [Respondent] is the sole owner and creator of the Hole In One registered trademark which he paid his attorneys to register on his behalf."[55] Anthony Walker testified that "[Respondent] is extremely proud of his name, his heritage and all that he has achieved in his life, there is absolutely no dishonesty associated with him, unfortunately the same cannot be said for Mr. Darryl Cazares claiming that he owns any part of the creation of 'Hole In One' by registering Hole In 1 Drinks, Inc."[56] While, as explained in the next section of this opinion, this evidence, in light of the other evidence cited earlier, does not persuade us that **Respondent alone** had a bona fide intent to use the mark at the time he filed the Section 1(b) application, this shows that Respondent was aware that the current dispute centers on **which person(s) or entity** could properly be said to have had a bona fide intent to use the mark at the time of filing.

Finally, Respondent, in his brief, addresses the circumstances under which he filed the HOLE IN ONE application under the advice of counsel.

---

[53] 29 TTABVUE 3-4.

[54] 26 TTABVUE 3.

[55] 29 TTABVUE 7.

[56] 29 TTABVUE 9.

> I was represented by counsel from the very beginning of filing for my Hole In One trademark & during the formation of my company, Hole In One Drinks, LLC by Ruth Khalsa of Legal Force Law. … I have supplied numerous emails to Mr. Cazares and others which were forwarded from my counsel confirming the progress of the application of my Mark in my personal name, in which Mr. Cazares responded by saying *"Excellent"* from darrylcazares@aol.com on Feb. 1, 2015. … These emails are written notice. Claiming otherwise is yet another falsehood perpetrated by the Plaintiffs [sic] which has caused this case to drag on needlessly.[57]

We find that even though Petitioner failed to plead a claim that Respondent did not have a right to file the application due to a lack of a bona fide intent to use the HOLE IN ONE mark in commerce by himself, such a claim was tried by implied consent because Respondent had fair notice of this issue and actively defended against it on the merits. Accordingly, the pleadings are deemed amended under Fed. R. Civ. P. 15(b).

## VII. Whether Respondent had a bona fide intent to use the HOLE IN ONE mark by himself when he filed the intent-to-use application?

Considering the evidence discussed above, we find that Respondent and Darryl Cazares **jointly** had a bona fide intention to use the mark HOLE IN ONE at the time Respondent filed the underlying application. Accordingly, the HOLE IN ONE trademark application should have been filed only in the names of Respondent and Darryl Cazares as joint applicants.[58] *See Conolty v. Conolty O'Connor NYC LLC*, 111 USPQ2d 1302, 1309 (TTAB 2014) (section 1(a) case; because applicant and opposer

---

[57] Respondent's Brief (35 TTABVUE 4-5).

[58] Because the application was filed before Hole-In-One, LLC was formed, Respondent's counsel should have identified Respondent and Cazares as joint owners.

are "partners," applicant is not the sole owner of the mark and therefore the application is void); *Am. Forests v. Sanders*, 54 USPQ2d at 1862 (finding intent to use application filed by Barbara Sanders void ab initio because "the true entity which had a bona fide intent to use the mark LEAF RELEAF and design was not Barbara Sanders an individual, but rather was a partnership consisting of Stephen Sanders and Barbara Sanders"), *aff'd*, 232 F.3d 907 (Fed. Cir. 2000) (unpublished).

In fact, Hole-In-One Drinks, LLC was the first and only user of the HOLE IN ONE trademark.[59] Thus, Hole-In-One Drinks, LLC is the owner of the HOLE IN ONE trademark, not Respondent. *See Holiday Inn v. Holiday Inns, Inc.*, 534 F.2d 312, 189 USPQ 630, 635 n.6 (CCPA 1976) ("It is fundamental that ownership of a mark is acquired by use, not by registration. One must be the owner of a mark before it can be registered."); *cf. Conolty*, 111 USPQ2d at 1309 (finding that because applicant and opposer are "partners," applicant is not the sole owner of the mark and therefore the application is void). To the extent that Respondent argues he created the mark, trademark rights are not gained by creating a mark, but through use of the mark. *See Selfway, Inc. v. Travelers Petroleum, Inc.*, 579 F.2d 75, 198 USPQ 271, 274 (CCPA 1978); *Reflange Inc. v. R-Con Int'l*, 17 USPQ2d 1125 (TTAB 1990) (opposer has priority as the first user even though applicant coined the mark and disclosed it to opposer as a proposed mark); *La Maur Inc. v. Int'l Pharm. Corp.*, 199 USPQ 612, 616

---

[59] There is no testimony or evidence that the use of the mark by Hole-In-One Drinks, LLC inures to the benefit of anyone or anything else.

(TTAB 1978) (conception of mark and discussion with others does not establish priority).

The preponderance of the evidence establishes that Respondent did not intend to use the HOLE IN ONE trademark by himself at the time he filed the underlying application in his own name; he intended to use it with Darryl Cazares, to form Hole-In-One Drinks, LLC, and to market HOLE IN ONE beverages through that company. Such a business structure may offer some advantages, but it also comes with some strictures, and the existence of the limited liability company through which Respondent elected to conduct his business cannot be turned on and off at will to suit the occasion. *See Noble House Home Furnishings, LLC v. Floorco Enters., LLC*, 118 USPQ2d 1413, 1422 (TTAB 2016). Based on Respondent's actions and statements, we cannot find anything to support Respondent's position that he intended to use the HOLE IN ONE mark in his own name alone and that Hole-In-One Drinks, LLC was the entity through which he intended to use and actually did use the HOLE IN ONE mark. *See Lyons v. Am. Coll. Of Veterinary Sports Med. & Rehab.*, 859 F.3d 1023, 123 USPQ2d 1024, 1027 (Fed. Cir. 2017) (due to the absence of documentation, the Board examines the actions and statements of the parties to determine ownership). The facts of record are inconsistent with Respondent's claim to have any continuing ownership of the HOLE IN ONE mark in his own right. We therefore find that Petitioner has established by a preponderance of the evidence that Respondent alone did not have a right to file the underlying intent-to-use application due to lack of a bona fide intent to use the HOLE IN ONE mark as of the filing date of the application,

that Respondent intended to use the HOLE IN ONE MARK with Darryl Cazares, as joint owners, and that, therefore, the underlying application for the mark was void ab initio. In other words, under these "shared circumstances," Petitioner and Respondent **jointly** had the bona fide intent to use the mark in commerce that formed the basis of the application. *See Am. Forests v. Sanders*, 54 USPQ2d at 1864.

Because we have found that the underlying application for Respondent's registration was void ab initio for lack of a bona fide intent to use the mark, Petitioner's other claims are moot. *See, e.g.*, *Wonderbread 5 v. Gilles*, 115 USPQ2d 1296, 1305 (TTAB 2015) (dismissing as moot petitioner's Section 2(d) and fraud claims after finding that the underlying application of the involved registration was void ab initio as of the application filing date because respondent was not the owner of the mark).

**Decision:** The petition to cancel is granted on the ground that the underlying intent-to-use application for Registration No. 4942535 was void ab initio because Respondent alone lacked the requisite bona fide intent to use the mark in commerce as of the filing date of the application.