NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**MATEY MICHAEL GHOMESHI,**
*Appellant*

**v.**

**STRONGVOLT, INC.,**
*Appellee*

**ANDREW HIRSHFELD, PERFORMING THE FUNCTIONS AND DUTIES OF THE UNDER SECRETARY OF COMMERCE FOR INTELLECTUAL PROPERTY AND DIRECTOR OF THE UNITED STATES PATENT AND TRADEMARK OFFICE,**
*Intervenor*

---

2019-1850

---

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board in No. 92061629.

---

Decided: April 12, 2021

---

MATEY MICHAEL GHOMESHI, Ontario, CA, pro se.

HOWARD TROY ROMERO, Romero Park P.S., Bellevue, WA, for appellee.

CHRISTINA J. HIEBER, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, for intervenor. Also represented by THOMAS L. CASAGRANDE, ERICA JEUNG DICKEY, THOMAS W. KRAUSE.

_____

Before PROST, *Chief Judge*, CHEN and HUGHES, *Circuit Judges*.

CHEN, *Circuit Judge*.

Matey Michael Ghomeshi appeals from a decision of the Trademark Trial and Appeal Board (Board) cancelling Registration No. 3,798,681 ('681 registration) for his MOBILEBLACKBOX composite mark. Because we find no error in the Board's determination that Mr. Ghomeshi failed to show use of the mark in commerce prior to applying for registration, we *affirm*.

BACKGROUND

A

In August 2009, Mr. Ghomeshi applied to register the composite mark shown below based on its use in commerce.



*See* App'x 34.[1]  In his application, Mr. Ghomeshi declared that he had used the mark in commerce with each of the following types of electronics goods:

_____

[1]    App'x cites herein refer to the appendix submitted by Mr. Ghomeshi with his opening brief.

> Audio speakers for computers; portable electronic devices for recording, organizing, transmitting, manipulating and reviewing text, data, image and audio files; audio-video media players for automobiles; audio and video recorders; digital video and event recorders that activate from automotive impact; analog and digital audio signal transmitters; transmitters for video signals for transmission over twisted pair cables, in class 9.[2]

*See id.* Mr. Ghomeshi's registration issued on June 8, 2010. *See id.*

In June 2014, StrongVolt, Inc. (StrongVolt) applied to register its BLKBOX mark for various electronics goods. *See* App'x 44–45. The Patent and Trademark Office refused StrongVolt's application because it determined that StrongVolt's mark was likely to cause confusion with Mr. Ghomeshi's. *See id.*; App'x 38.

On June 5, 2015, StrongVolt filed a petition to cancel Mr. Ghomeshi's registration, arguing that the registration should not have issued because Mr. Ghomeshi did not use the mark in commerce prior to filing his application. *See* App'x 37–39. StrongVolt served Mr. Ghomeshi with the petition via email on June 5 and mailed a copy to Mr. Ghomeshi's listed address that same day. *See* App'x 40. After the mailed copy was returned undeliverable, Mr. Ghomeshi received a hand-delivered copy of the petition on June 25, 2015. *See* App'x 163.

---

[2] In response to an office action from the Patent and Trademark Office, Mr. Ghomeshi amended the original identification of goods to the list above and confirmed its accuracy.

Pursuant to 37 C.F.R § 2.133,[3] Mr. Ghomeshi moved to delete most of the goods initially listed in his application. *See* App'x 146. Mr. Ghomeshi did, however, continue to assert that he had used the mark in commerce with "audio speakers for computers" and "analog and digital audio signal transmitters" prior to filing his application. *See id.* StrongVolt consented to Mr. Ghomeshi's proposed amendment. *See* App'x 147–48 (noting that its consent "shall not be interpreted as to conceding on the issue of validity of the remaining goods listed in connection with the '681 registration."). The Board granted Mr. Ghomeshi's request on July 29, 2016. *See* App'x 149–50.

After having timely answered and requested other relief from the Board, Mr. Ghomeshi moved to amend his answer to assert new affirmative defenses, including a claim that he was not timely served a copy of StrongVolt's cancellation petition within five years of the registration of his mark.[4]    *See* App'x 151–64.    The Board denied

---

[3]    37 C.F.R § 2.133 permits amendments to registrations subject to cancellation proceedings with consent of the other party and approval by the Board.

[4]    The grounds on which a petitioner can challenge registration are more expansive if the petition is filed within five years from the date a mark was registered. *See* 15 U.S.C. § 1064(1); *Int'l Mobile Machines Corp. v. Int'l Tel. & Tel. Corp.*, 800 F.2d 1118, 1119–20 (Fed. Cir. 1986) ("Cancellation of a mark's registration within the initial five years of registration may be based upon any ground which could have prevented registration initially."). After five years, the registration may only be challenged under certain enumerated grounds. *See, e.g.*, 15 U.S.C. §§ 1064(3), (5). StrongVolt's challenge—failure to use the mark in commerce prior to applying for registration—is available only if StrongVolt filed its petition within five years of registration. Mr. Ghomeshi's mark was registered

Mr. Ghomeshi's motion.  As to untimely service, the Board noted that "[t]he purpose of service in a Board proceeding is to provide notice of the action."  *See* App'x 171.  Because Mr. Ghomeshi "d[id] not deny receiving service," "promptly responded [to the petition] with his answer," and did not argue that he was prejudiced by any alleged service deficiencies, *see id.*, the Board found dismissal on that basis improper, *see* App'x 172.  The Board also struck the remainder of Mr. Ghomeshi's additional proposed defenses because they were insufficiently pleaded or were legally and factually deficient.  *See* App'x 172–74.

B

On November 23, 2018, the Board issued its decision cancelling Mr. Ghomeshi's registration.  *See StrongVolt, Inc., v. Ghomeshi*, No. 9206162, 2018 WL 6179205 (T.T.A.B. Nov. 23, 2018) (Board Opinion).  The Board found StrongVolt was authorized to bring its challenge because its own trademark application was refused based on Mr. Ghomeshi's registered mark.  *See id.* at *7.[5]  The Board then analyzed whether Mr. Ghomeshi had used his mark in connection with audio speakers for computers and analog and digital audio signal transmitters prior to filing his application.

---

on June 8, 2010, and, under the five-year time deadline provided in the statute, StrongVolt timely filed its petition on June 5, 2015.

[5]    Both Mr. Ghomeshi and the Board described this issue as whether StrongVolt had "standing."  *See id.*  To be clear, the issue in front of the Board was not whether StrongVolt had Article III standing, but whether it had satisfied the statutory requirements of 15 U.S.C. § 1064 to pursue a cancellation proceeding.  *See Corcamore LLC v. SFM LLC*, 978 F.3d 1298, 1304 (Fed. Cir. 2020).

With respect to audio speakers for computers, the Board made three key findings. First, the Board determined that Mr. Ghomeshi's purported commercial sales of headphones were irrelevant because headphones are not audio speakers for computers. *See id.* at *9. Second, assuming headphones are audio speakers for computers, the Board found no evidence of bona fide sales of such headphones because the only receipts proffered by Mr. Ghomeshi were for "samples."[6] *See id.* at *9–10. The Board additionally found that Mr. Ghomeshi failed to present sufficient evidence that his mark was used on the headphones at issue or their packaging. *See id.* at *11. And Mr. Ghomeshi's advertisement, which displayed the registered mark with headphones, was undated and did not include a means for ordering headphones. *See id.* Without a means to order the product depicted, the Board determined that the advertisement failed to show use in commerce. *See id.* The Board similarly rejected Mr. Ghomeshi's argument that archived webpages depicting various websites provided evidence of use and, in light of the other evidence of record, declined to credit Mr. Ghomeshi's declaration that the mark had been in continuous use with audio speakers for computers. *See id.*

The Board also determined that Mr. Ghomeshi had not presented evidence sufficient to show that he used his mark in connection with analog and digital audio signal transmitters prior to filing his application for registration. *See id.* at *12. The Board first concluded that a series of undated documents showing some transmitters bearing the mark and others not bearing the mark lacked probative value. *See id.* The Board then found that Mr. Ghomeshi's single receipt reflecting a sale of a transmitter, dated in

---

[6]    One of these purported sales resulted in the headphones being shipped to the address of Mr. Ghomeshi's assistant. *See* App'x 23.

2013, did not evidence pre-filing use in commerce and did not show that Mr. Ghomeshi used the mark on the transmitters. *See id.*[7]

After the Board issued its cancellation decision and its denial of Mr. Ghomeshi's request for reconsideration, on May 7, 2019, StrongVolt filed a form certificate of dissolution with the State of California. *See* App'x 46. The document contained language indicating StrongVolt "ha[d] been completely wound up and [wa]s dissolved" and that "[t]he known assets have been distributed to the persons entitled thereto or the corporation acquired no known assets." *See id.*

Mr. Ghomeshi appeals the cancellation of his mark. We have jurisdiction under 28 U.S.C. 1295(a)(4)(B).

## DISCUSSION

In addition to contesting the Board's conclusion that he did not use his mark in commerce prior to filing for registration, Mr. Ghomeshi raises several procedural challenges. We address Mr. Ghomeshi's procedural arguments first and then turn to the merits of the Board's decision.

## A

Mr. Ghomeshi's argues that: (1) as of its dissolution, StrongVolt did not satisfy the statutory requirements to contest his registration; (2) the cancellation petition was

---

[7] The Board struck other receipts pre-dating the filing date as a sanction for Mr. Ghomeshi's failure to produce them in discovery. Nonetheless, the Board concluded that the excluded receipts were insufficient to show use of the mark because none mentioned the mark and Mr. Ghomeshi did not verify that any goods related to the receipts were branded with the composite mark. *See id.* at n.60.

untimely; (3) the Board erred in denying his motion to amend his answer; (4) StrongVolt is precluded from challenging the validity of his registration for the remaining goods by consenting to his proposed amendment to his registration; and (5) the Board's decision requires reversal based on purported fraud committed by StrongVolt during the cancellation proceeding. We address each argument in turn.

Mr. Ghomeshi contends that StrongVolt began its dissolution process during the trademark cancellation proceeding, *see id.* at 17–19, and, because StrongVolt's certificate of dissolution said it no longer had any assets, it "has/had no claims of ownership to any trademark; which further nullifie[s] [its] pleading and standing within the [Board] proceeding," Appellant's Br. at 21. Thus, Mr. Ghomeshi argues, "[t]he Board's final decision . . . was falsely based on a legally active Plaintiff/Petitioner [and it] therefore must be reversed." *Id.* at 26. We disagree.

"A party that demonstrates a real interest in cancelling a trademark under § 1064" may file a petition seeking cancellation. *See Corcamore*, 978 F.3d at 1306. We have long held that rejection of an application to register one's own trademark based on a likelihood of confusion with a registered mark demonstrates a real interest. *See Empresa Cubana Del Tabaco v. Gen. Cigar Co.*, 753 F.3d 1270, 1274 (Fed. Cir. 2014); *Lipton Indus., Inc. v. Ralston Purina Co.*, 670 F.2d 1024, 1029 (CCPA 1982).

Here, Mr. Ghomeshi does not contest that the Patent and Trademark Office rejected StrongVolt's application to register its BLKBOX mark based on a likelihood of confusion with Mr. Ghomeshi's mark. Nor does Mr. Ghomeshi claim that StrongVolt was not using the BLKBOX mark in commerce when it applied for registration. Instead, Mr. Ghomeshi contends that, sometime during the cancellation proceeding, StrongVolt ceased using BLKBOX in commerce and disavowed ownership of the mark based on

StrongVolt's certificate of dissolution. In other words, Mr. Ghomeshi contends StrongVolt's certificate of dissolution demonstrates that it no longer had a real commercial interest in the mark during the proceeding.

Without direct evidence that StrongVolt ceased using the BLKBOX mark in commerce or disavowed ownership of its mark, topics Mr. Ghomeshi failed to explore in the cancellation proceeding, we are compelled to reject Mr. Ghomeshi's argument which relies solely on the certificate of dissolution. First, the filing of a certificate of dissolution does not deprive a corporation of the ability to litigate disputes incidental to its wind up. *See* Cal Corp. Code § 2010; *A.B. Concrete Coating Inc. v. Wells Fargo Bank, Nat'l Ass'n*, No. 2:20-CV-211-EFB, 2020 WL 5820613, at *3 (E.D. Cal. Sept. 30, 2020) ("[T]he filing of the certificate of dissolution [stating that the corporation was completely wound up] only marked the end of plaintiff's normal business activities, not the completion of its winding-up process, as defendant contends.").[8]   Second, even if StrongVolt's certificate of dissolution had the legal effect that Mr. Ghomeshi asserts, it became effective as of its filing on May 7, 2019—i.e., well after the Board proceedings had concluded. *See* Cal Corp. Code § 1905; App'x 46. Absent record evidence that StrongVolt was not actively using the BLKBOX mark during the entirety of the proceeding, or

---

[8]   This case is distinguishable from *Mongols Nation Motorcycle Club, Inc. v. City of Lancaster*, 145 Cal. Rptr. 3d 122, 126 (Ct. App. 2012), cited by Mr. Ghomeshi. There, the certificate of dissolution indicated that the company "never acquired any known assets" nor "incurred any known debts or liabilities." *Id.* Thus, with no business affairs to wind up, the court determined that the appellant's participation in the litigation could not be part of its winding-up process. *See id.* In contrast, StrongVolt's certificate makes no such representations. *See* App'x 46.

that it possessed no commercial interest in the mark at any time before its dissolution, we decline to disturb the Board's decision on this basis.

As to Mr. Ghomeshi's challenges to the timeliness of service and the Board's refusal to allow him to amend his answer, we agree with the logic and reasoning provided by the Board. We see no error in the Board's service-related analysis finding that the notice function of service was completed, and any defect in service was not prejudicial to Mr. Ghomeshi. *See* App'x 170–72. Similarly, the Board's denial of Mr. Ghomeshi's motion to amend was neither legally nor factually flawed. *See* App'x 172–74.

Mr. Ghomeshi's contention that StrongVolt's consent to his registration amendment deleting several identified goods barred StrongVolt from challenging his purported use of the mark with the remaining goods is wholly without merit. Mr. Ghomeshi cites no authority for his proposition, which is particularly dubious in light of StrongVolt's express statement that its consent "shall not be interpreted as to conceding on the issue of validity of the remaining goods listed in connection with the '681 registration." *See* App'x 147–48.

Lastly, we address Mr. Ghomeshi's contention that StrongVolt's allegedly fraudulent conduct warrants reversal of the Board's cancellation of his mark. According to Mr. Ghomeshi, StrongVolt's misconduct includes filing a false certificate of service with the petition, falsely representing that its officers were, indeed, its officers, and filing a LexisNexis report with inaccurate information. We decline to reverse the Board on this basis because Mr. Ghomeshi fails to present any credible evidence that any of these statements or documents are fraudulent or were made or submitted with deceptive intent. Moreover, Mr. Ghomeshi does not explain how any of these allegedly false statements prejudiced him. *See Provident Sav. Bank v. Popovich*, 71 F.3d 696, 700 (7th Cir. 1995) (rejecting pro se

litigant's argument for reversal under Rule 60(b)(3) because he failed to show prejudice from any purported misrepresentations).

B

We likewise find no error in the Board's determination that Mr. Ghomeshi failed to show he used his mark in commerce with either audio speakers for computers or analog and digital audio signal transmitters. The Board's conclusion regarding whether a mark has been used in commerce is a factual determination reviewed for substantial evidence. *Aycock Eng'g, Inc. v. Airflite, Inc.*, 560 F.3d 1350, 1360 (Fed. Cir. 2009).

Substantial evidence supports the Board's conclusion that Mr. Ghomeshi failed to use his mark in commerce with audio speakers for computers prior to filing his registration. Even setting aside the Board's determination that headphones are not audio speakers for computers, the Board's conclusion that Mr. Ghomeshi's two receipts for "sample" headphones did not reflect bona fide sales is well supported. *See* Board Decision at *9–10; *Smith Int'l, Inc. v. Olin Corp.*, 1981 WL 48127, at *10 (T.T.A.B. Jan. 23, 1981) ("[A] shipment of an article or a prototype of an article for testing and experimentation is not a public use upon which trademark rights are created."). The Board's finding that Mr. Ghomeshi's other proffered evidence—images of headphones displaying only a word mark (and not the registered composite mark) and an undated advertisement without a means to order—failed to show that the mark was used in commerce on any such headphones is also well supported. *See* Board Decision at *11. Moreover, we agree with the Board that Mr. Ghomeshi's archived webpages, on which he purported to sell those headphones, do not illustrate or prove that he had been using the registered composite mark before his application for registration on any particular good, headphones or otherwise. *See id.* And, in light of the findings described above, we see no error in the

Board's decision not to credit Mr. Ghomeshi's declaration that he had continuously used the mark with audio speakers for computers.  *See id.*

Similarly, the Board's determination that Mr. Ghomeshi failed to show use of his mark in connection with analog and digital audio signal transmitters prior to filing his application for registration is supported by substantial evidence.  *See id.* at \*12.  We see no error in the Board's conclusion that Mr. Ghomeshi's undated documents lack probative value or that a single receipt from 2013 did not evidence use in commerce prior to his filing for registration in 2009.  *See id.*  Likewise, although the Board acted within its discretion to strike Mr. Ghomeshi's other receipts as a discovery sanction, *see Corcamore,* 978 F.3d at 1307, we see no error in its additional determination that such receipts, which do not mention the mark, failed to prove use in commerce.  *See* Board Decision at \*12 n.60.

## CONCLUSION

We have considered Mr. Ghomeshi's remaining arguments and find them unpersuasive.  For the reasons set forth above, we affirm the Board's decision cancelling Registration No. 3,798,681.

## **AFFIRMED**

## COSTS

No costs.